**UNITED STATES of America, Appellee,**

v.

**George Dean MARTIN, Defendant– Appellant.**

No. 97–1341.

United States Court of Appeals, Second Circuit.

July 2, 1998.

Richard I. Rubin, Rubin, Kidney, Myer & DeWolfe, Barre, Vermont, for Defendant–Appellant.

David V. Kirby, Assistant United States Attorney, Chief, Criminal Division (Charles R. Tetzlaff, United States Attorney for the District of Vermont), Burlington, Vermont, for Appellee.

Before: OAKES, WALKER, and MAGILL,* Circuit Judges.

* The Honorable Frank J. Magill, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

JOHN M. WALKER, JR., Circuit Judge.

Defendant-appellant George Dean Martin appeals from his judgment of conviction, after a jury trial in the United States District Court for the District of Vermont (J. Garvan Murtha, *Chief District Judge*), of four counts of interstate transportation of stolen property in violation of 18 U.S.C. § 2314. On appeal, he challenges the sentence imposed by the district court, as well as the district court's denial of his pre-trial motion to suppress evidence. We affirm the judgment of the district court.

## BACKGROUND

Martin owned and operated Warplanes, Inc. ("Warplanes"), a company engaged in the business of restoring old aircraft and buying and selling aircraft parts. Warplanes is located in a hangar at Burlington International Airport in South Burlington, Vermont. In December 1991, the Burlington Police Department received a complaint from employees of Metro Air Northeast ("MANE"), a bankrupt commuter airline, that several items of avionics equipment were missing from its hangar, which was adjacent to the Warplanes hangar. Several MANE employees identified Martin as a suspect. On December 6, 1991, Burlington Police Corporal James F. Mullins, Jr. interviewed Martin, who denied any involvement in the thefts.

MANE entered the serial numbers of the stolen items into a nationwide stolen parts locator service. On or about December 10, 1991, John Braddock, a co-owner of Air Transport Avionics ("Air Transport") in Coral Springs, Florida, noticed that eight parts that his company had purchased from Martin on November 25 and December 5, 1991 were listed in the stolen parts locator service as having been stolen from MANE. Braddock telephoned Martin, informed him that the parts were stolen, and demanded a refund. Martin agreed, telling Braddock "I hope this goes no further." On December 11 and December 16, 1991, Braddock mailed the stolen parts to Martin. He sent one package via

Federal Express, and the other via the United Parcel Service (UPS). Braddock then notified the Burlington Police Department and turned over the package tracking numbers.

On December 20, 1991, Corporal Mullins obtained a warrant from a state judicial officer to search "[a]ny and all aircraft hangers (sic), buildings, offices structures (sic), vehicles and aircraft that are affiliated with Warplanes, Inc, being a business located at the Burlington International Airport in South Burlington, VT." In support of its warrant application, the police submitted, *inter alia,* affidavits from Braddock and the other Air Transport co-owner Timothy Murray. Both affidavits misidentified the company as "War Planes" instead of "Warplanes," and stated that the company was located in "Burlington," rather than "South Burlington." On December 23, 1991, officers executed the search warrant. Just before the search, Martin volunteered to police officers that he had knowingly sold stolen parts, but claimed that he did so only as a favor to a MANE employee. After Martin's admission, the officers informed Martin that they had a warrant to search the premises. When the search revealed eight stolen parts locked in a file cabinet in Martin's office, the officers placed Martin under arrest. Subsequent investigation revealed that on July 31, 1991, Martin offered to sell additional stolen parts to a Swiss company, Crossair Ltd.

At the request of the police, UPS intercepted and held one of the packages that Air Transport had shipped to Martin when the package arrived at the Williston, Vermont UPS office on December 20, 1991. On December 31, 1991, police officer Stephen J. Wark obtained a warrant to search this package, identified by its UPS "pick-up" number and by the items believed to be located inside. On January 2, 1992, pursuant to the warrant, the officers searched the package and found the airplane parts that Martin had shipped to Air Transport on December 5, 1991.

On August 29, 1995, Martin was indicted on four counts of transporting stolen property in interstate commerce in violation of 18 U.S.C. § 2314. On September 17, 1996, a jury found Martin guilty on all four counts. On May 19, 1997, Chief Judge Murtha sentenced Martin to fifteen months' imprisonment, two-years' supervised release, and a $5,000 fine, and ordered restitution in the amount of $16,929.

## DISCUSSION

On appeal, Martin argues that the district court failed to make clear and specific findings at sentencing resolving the amount of loss for which Martin could be held responsible. Further, he argues that the district court improperly calculated his offense level. Finally, he argues that the district court improperly failed to suppress evidence seized from Martin's office on December 23, 1991 and from UPS on January 2, 1992.

### I. *Sentencing Issues*

Martin's prison sentence of 15 months was based on an adjusted offense level of 14 and a criminal history category of one. The court calculated the offense level as follows. Starting with the base offense level of four for transporting stolen property, *see* U.S.S.G. § 2B1.1(a), the district court adopted the finding of the presentence report ("PSR") and found that Martin's actions caused a loss of approximately $89,640, warranting an eight level increase, *see* U.S.S.G. § 2B1.1(b)(1)(I). The district court then increased the offense level by an additional two levels because the crime involved more than minimal planning, *see* U.S.S.G. § 2B1.1(b)(4)(A), resulting in the final adjusted offense level of 14.

Martin argues first that the district court failed to make sufficiently clear and specific findings at sentencing. "Where the sentencing judge neither clearly resolves [a] disputed issue nor explicitly relies on factual assertions made in a PSR," this court must remand for further findings. *United States v. Reed,* 49 F.3d 895, 901 (2d Cir.1995); *see United States v. Ortega,* 94 F.3d 764, 768 (2d Cir.1996) (sentencing court must make sufficient findings to allow appellate review). According to Martin, the amount of loss for which he was held liable should have been limited to the value of the parts he actually

transported as alleged in the indictment; $28,900, and should not have included the value of other stolen parts which Martin possessed but never sold, approximately $60,-000. Pursuant to U.S.S.G. § 1B1.3(a)(2), a defendant can be held liable for uncharged relevant conduct that was "part of the same course of conduct or common scheme or plan as the offense of conviction." However, Martin argues that the district court did not make adequate findings to support its conclusion that the possession of the $60,000 of stolen parts was relevant conduct.

■ We do not accept Martin's argument. A sentencing court satisfies its obligation to clearly resolve disputed sentencing issues if it " 'indicates, either at the sentencing hearing or in the written judgment, that it is adopting the recommendations' " of the probation officer in the PSR. *United States v. Prince*, 110 F.3d 921, 924 (2d Cir.) (quoting *United States v. Thompson*, 76 F.3d 442, 456 (2d Cir.1996)), *cert. denied*, — U.S. —, 118 S.Ct. 188, 139 L.Ed.2d 127 (1997). While the district court could have been more explicit, it plainly intended to adopt the PSR's findings on relevant conduct. The PSR indicates that the total value of the stolen parts possessed by Martin, including the parts that he never sold, was $89,640. At the sentencing hearing, the district court ruled as follows:

> ... I'm finding, based upon relevant conduct in the guidelines, that there was a course of conduct and that it was part of a common scheme to bring it up to *the amount that the presentence report indicates, almost $90,000.* So that those levels are justified.
>
> And, therefore, starting with 4—a base level of 4, it's increased by 8 levels, and then another 2 levels for more than minimal planning.

Sentencing Transcript at 32 (emphasis added). Although the court did not say in so many words: "I am adopting the findings in the PSR", this was the court's obvious intent; the government proffered, and the PSR suggested, only one factual theory under which Martin could have been held liable for stolen property valued at $89,640. *Cf. Reed*, 49 F.3d at 901 (where the government proffers

more than one basis for an enhancement, the court must specify the basis on which it relies). We will not remand where the court's intention is plain from the record.

■ Second, Martin argues that, even if Chief Judge Murtha satisfactorily explained his conclusion that Martin's possession of the unsold equipment was part of the same course of conduct and common scheme or plan as the conduct charged in the indictment, that conclusion lacks evidentiary support. We review the district court's factual determination of relevant conduct for clear error. *See United States v. Giraldo*, 80 F.3d 667, 679 (2d Cir.), *cert. denied*, — U.S. —, 117 S.Ct. 135, 136 L.Ed.2d 83 (1996).

■ As we explained above, a judge calculating a defendant's adjusted offense level should consider all of the defendant's relevant conduct, including "all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3 Application Note 9(A); *see United States v. LaBarbara*, 129 F.3d 81, 86 (2d Cir.1997); *United States v. Walsh*, 119 F.3d 115, 121 (2d Cir.1997). Martin's possession of the unsold parts stolen from MANE easily satisfies this standard. There was a common victim, a common time period, and a common type of merchandise.

Furthermore, even assuming, *arguendo*, that Martin's possession of stolen parts was not part of a common scheme or plan, at a minimum it was part of the same course of conduct as his transportation of stolen parts. As Application Note 9(B) to U.S.S.G. § 1B1.3 provides:

> Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of of-

fenses. Factors ... to be considered include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.

Here, the charged and uncharged offenses were similar: all involved avionics equipment stolen from MANE, the offenses occurred within a short period of time, and the sales, possessions, and attempted sales were repetitious. The district court did not err in sentencing Martin based upon the approximately $60,000 of unsold equipment in addition to the $28,900 of equipment that was sold.

Third, Martin claims that the district court erred in computing his offense level pursuant to § 2B1.1 rather than § 2X1.1. Section 2X1.1 provides guidance to district courts in computing the offense level in cases of attempt, solicitation, or conspiracy.[1] "In the case of a partially completed offense ... the offense level is to be determined in accordance with the provisions of § 2X1.1" rather than § 2B1.1. U.S.S.G. § 2B1.1 Application Note 2; *see also* U.S.S.G. § 2X1.1 Application Note 4. According to Martin, his possession of the approximately $60,000 of stolen avionics parts was part of an uncompleted attempt to transport the parts, and therefore his offense level should have been calculated pursuant to § 2X1.1 rather than § 2B1.1.

■ We find this argument unpersuasive. Section 2B1.1 is specifically addressed to "Possessing Stolen Property." Here, Martin did not simply attempt to possess stolen property; he actually possessed it. Therefore, the district court properly sentenced Martin pursuant to § 2B1.1. Martin may not recharacterize his possession of stolen property as an uncompleted attempt to commit some other crime in an effort to receive the more beneficial treatment provided by § 2X1.1. In the present case, Martin's possession of stolen property was itself relevant conduct properly considered in determining the amount of loss for which Martin should be held accountable pursuant to § 2B1.1.

■ Finally, Martin argues that "[t]he stolen property possessed by Martin came from a local business and federal jurisdiction was not implicated until Martin arranged for and made his interstate sales," Appellant's Brief at 10, and that, therefore, his possession of that stolen but untransported property can not be considered as relevant conduct at sentencing. This argument has no merit. Without expressing any view as to whether Martin could have been federally prosecuted for simple possession of the $60,000 of unsold equipment, *see* 18 U.S.C. § 2315, a federal district court may consider any relevant conduct when sentencing a defendant, whether or not the conduct is a federal crime. In the context of U.S.S.G. § 1B1.3(a), jurisdictional considerations are not relevant to a defendant's criminal responsibility. *See, e.g., United States v. Anderson,* 5 F.3d 795, 801 (5th Cir.1993) (under kidnapping guideline, U.S.S.G. § 2A4.1(b)(7), the term "another offense" includes state and local offenses and not just offenses constituting "violations of federal law"); *United States v. Pollard,* 986 F.2d 44, 47 (3d Cir.1993) (a federal district court may "consider uncharged, relevant state conduct as well as federal.... [W]hile it was important to the district court's consideration [of his sentence] that [the defendant] committed [a state law crime], it makes no difference that the same court lacked jurisdiction to try him for it."); *United States v. Byrd,* 954 F.2d 586, 589 (9th Cir.1992) ("Once jurisdiction is established over the offense of conviction, such jurisdictional requirements are irrelevant in computing a sentence."); *United States v. Day,* 943 F.2d 1306, 1310–11 (11th Cir.1991) (same); *United States v. Bos,* 917 F.2d 1178, 1181 (9th Cir. 1990) ("The interstate commerce requirement [of the federal arson statute, 18 U.S.C. § 44(i),] relates to jurisdiction, not the seriousness of the crime, and therefore should not matter in determining the range of a defendant's punishment under the guide-

---

1. Under § 2X1.1(b), in computing the offense level for an attempted offense, the court should apply the appropriate base offense level for the substantive offense, and decrease it by three levels, "unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control."

lines.·...."). Thus, there is no constitutional or statutory bar that prevented the district court from sentencing Martin based upon his possession of stolen property.

For the foregoing reasons, we affirm the sentence imposed by the district court.

## II. Search Warrants

 Martin appeals from the district court's denial of his pretrial motion to suppress evidence seized by the Burlington Police Department on December 23, 1991 from his office and on January 2, 1992 from UPS. We review *de novo* the district court's resolution of legal issues regarding the validity of search warrants and the suppression of evidence seized thereunder. *See United States v. Becerra,* 97 F.3d 669, 671 (2d Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 1006, 136 L.Ed.2d 885 (1997); *United States v. Moetamedi,* 46 F.3d 225, 228 (2d Cir.1995). Findings of fact are reviewed for clear error. *See United States v. Smith,* 9 F.3d 1007, 1011 (2d Cir.1993). "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Id.* at 1012 (quoting *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)); *see United States v. Ellison,* 793 F.2d 942, 946 (8th Cir.1986). A reviewing court should not interpret supporting affidavits in "'a hypertechnical, rather than a commonsense manner.... [T]he resolution of doubtful cases ... should be largely determined by the preference to be accorded to warrants.'" *Smith,* 9 F.3d at 1012 (quoting *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)).

### A. December 20, 1991 warrant to search the premises.

 First, Martin argues that the state judicial officer lacked probable cause to believe that the stolen equipment would be found in the Warplanes offices at Burlington Airport when he issued the warrant on December 20, 1991. He claims that because the supporting affidavits of Air–Transport co-owners Braddock and Murray misidentified the name of Martin's business as "War Planes, Inc.," rather than "Warplanes," and indicated that the business was located in Burlington, Vermont, rather than South Burlington, Vermont, where the Burlington Airport is actually located, "[t]here is no factual basis from which the judicial officer [could have made] a determination that War Planes, Inc. in Burlington, Vermont is in fact the Warplanes, Inc. in South Burlington, Vermont, or even that there is any business known as Warplanes located at the airport." Appellant's Brief at 14. Therefore, Martin argues, the warrant was not supported by probable cause.

This argument is meritless. Our inquiry is limited to determining whether the state judicial officer, upon reviewing all of the affidavits before him, had a substantial basis to believe that the goods in question would probably be found in Warplanes's hangar at the Burlington International Airport. *See Smith,* 9 F.3d at 1012; *Gates,* 462 U.S. at 238–39, 103 S.Ct. 2317; *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). The errors identified by Martin were minor and therefore insufficient to defeat probable cause. *See Smith,* 9 F.3d at 1014 ("minor errors or inconsistencies [in supporting affidavits do not] undermine the existence of probable cause"); *United States v. Kahan,* 572 F.2d 923, 932 (2d Cir.1978) (unintentional and immaterial misstatements of affiant need not invalidate warrant); *cf. United States v. Dahlman,* 13 F.3d 1391, 1394 (10th Cir.1993) (warrant sufficiently describes location to be searched, "if [it] enables the officers to ascertain the place to be searched with reasonable effort.") (internal quotation omitted, alteration in original); *Velardi v. Walsh,* 40 F.3d 569, 576 (2d Cir.1994) (warrant containing "partial misdescriptions of the place to be searched" satisfies the Fourth Amendment "so long as the officer executing the warrant could ascertain and identify the target of the search with no reasonable probability of searching another premises in error.") (internal quotation marks omitted).

In the present case, the police department's application was supported by Officer Mullins' affidavit properly identifying the company as "Warplanes," "located at the southwest area of the Burlington International Airport" in "South Burlington, VT."

In another affidavit, Mullins swore that he spoke with Braddock on December 10, 1991, and that Braddock advised him that "Martin had sold stolen avionics equipment to Air Transport." Plainly, it was reasonable for the state judicial officer to conclude that the "Warplanes, Inc." at the "Burlington International Airport" in "South Burlington, VT" to which Mullins referred in his affidavit is the "War Planes, Inc. of Burlington, Vermont" identified in the Murray and Braddock affidavits. The minor and immaterial misdescription of the airport's location in the affidavits of Floridians Braddock and Murray did not create an ambiguity precluding a finding of probable cause.

■ Next, Martin claims (1) that the December 20, 1991 warrant to search the Warplanes hangar failed to describe with particularity the items to be seized, *see* U.S. Const. amend. IV; *National City Trading Corp. v. United States*, 635 F.2d 1020, 1026 (2d Cir. 1980), and (2) that the same warrant was stale when issued because it was not based on current facts, *see United States v. Beltempo*, 675 F.2d 472, 477 (2d Cir.1982). Without expressing a view as to the merits of these claims, we find that the police officers who executed both warrants acted in objective good faith, obviating any need to suppress evidence. *See United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). A reasonably well-trained officer would have had no reason to doubt the legitimacy of the search warrants, given their authorization by the state judicial officer and the fact that they were well supported by affidavits. *See Simms v. Village of Albion*, 115 F.3d 1098, 1106 (2d Cir.1997); *cf. United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996) (no good faith where officers failed to provide magistrate with sufficient facts to determine existence of probable cause). Neither ground supports suppression.

### B. Search and seizure of the UPS package.

Martin maintains that the evidence found in the UPS package during the January 2, 1992 search should be suppressed. He argues (1) that the warrantless seizure of the package on December 20, 1991 was improper and (2) that the government waited too long both in securing a warrant to search the package and in conducting the search. This latter claim rests on the eleven day delay between December 20, 1991, the date the police department effected the seizure of the package, and December 31, 1991, the date the police department secured a warrant to search the package. We do not agree.

■ "Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the [Supreme] Court has interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *United States v. Place*, 462 U.S. 696, 701, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *see also United States v. Jacobsen*, 466 U.S. 109, 121–22 and nn. 20–21, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *Texas v. Brown*, 460 U.S. 730, 749–50, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (Stevens, J., concurring) (container may be seized if there is probable cause to believe it contains contraband, but container may not be searched without warrant issued by neutral magistrate); *Arkansas v. Sanders*, 442 U.S. 753, 761–62, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *United States v. Hooper*, 935 F.2d 484, 495, 498 (2d Cir.1991); *United States v. Respress*, 9 F.3d 483, 486 (6th Cir.1993); *United States v. Jodoin*, 672 F.2d 232, 235 (1st Cir.1982). In the instant case, by informing the police of the package's contents and supplying them with its tracking number, Braddock provided the police with probable cause to believe that the package contained contraband. Moreover, seizing the package without a warrant was justified by the exigencies of the situation. Had UPS delivered the package to Martin, the police would have risked the "loss or destruction of suspected contraband." *Jacobsen*, 466 U.S. at 114, 104 S.Ct. 1652. Therefore, the seizure of the package pending issuance of a warrant to examine its contents does not require suppression of the evidence derived from its eventual search.

Relying largely on *Place*, Martin argues in the alternative that even if the seizure were initially appropriate, the police acted unreasonably in waiting eleven days to secure a warrant. In *Place*, the Supreme Court ruled that pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer may briefly seize a traveler's luggage based on his reasonable suspicion that the luggage contains contraband. 462 U.S. at 706, 103 S.Ct. 2637. However, on the facts of that case, the Court held that a seizure lasting ninety minutes was unreasonably long. *Id.* at 709–10, 103 S.Ct. 2637. *Place* does not control here, however, because the Court's ruling was based on its belief that the seizure was too "intrusive as to be justifiable on reasonable suspicion" alone. *Id.* at 709, 103 S.Ct. 2637; *see also United States v. Allen*, 990 F.2d 667, 671 (1st Cir.1993) (even if officers have reasonable suspicion to delay package, delay must be for a reasonable time). In the present case, the seizure was based on probable cause, not mere suspicion. *See United States v. Lewis*, 902 F.2d 1176, 1180 (5th Cir.1990) (while seizure of overnight package based on reasonable suspicion may violate Fourth Amendment if it continues without probable cause, "reasonable time analysis ... does not apply to the officers' overnight detention of ... package" that is supported by probable cause); *Jodoin*, 672 F.2d at 235 (three day delay proper where supported by probable cause).

 Of course, even a seizure based on probable cause is unconstitutional if police act with unreasonable delay in securing a warrant. *See* U.S. Const. amend. IV ("right of the people to be secure ... against *unreasonable searches* ... shall not be violated") (emphasis added); *Respress*, 9 F.3d at 488 ("even with the existence of probable cause to effect a seizure, the duration of the seizure pending the issuance of a search warrant must still be reasonable"); *see also Jacobsen*, 466 U.S. at 121, 104 S.Ct. 1652 (where officers have probable cause to believe container contains contraband, it "may be seized, *at least temporarily*, without a warrant) (emphasis added); *Brown*, 460 U.S. at 750, 103 S.Ct. 1535 (Stevens, J., concurring) ("item may be seized *temporarily* " if there is probable cause) (emphasis added). In some circumstances eleven days might well constitute an unreasonable delay. However, several factors lead us to conclude that, under the particular circumstances present here, the delay was not constitutionally infirm. First, the eleven day delay included two weekends and the Christmas holiday, which could explain the difficulty in promptly obtaining the warrant. Second, although Martin had a Fourth Amendment interest in the package, "he assume[d] the risk that [Braddock would] reveal the information to the authorities," weakening his claim to Fourth Amendment privacy. *Jacobsen*, 466 U.S. at 117, 104 S.Ct. 1652. Third, and to similar effect, seizure is necessarily less intrusive where "the owner has relinquished control of the property to a third party" as was the case here. *See Place*, 462 U.S. at 705 and n. 6, 103 S.Ct. 2637. And fourth, this is not a case where seizure of property would effectively restrain the liberty interests of the person from whom the property was seized, as is the case where officers seize a traveler's luggage and thereby cause "disruption of his travel plans." *Id.* at 708, 103 S.Ct. 2637.

In sum, the police officials were justified in directing UPS to delay delivery of the package because they had probable cause to believe it contained contraband and because exigent circumstances dictated that the delivery be delayed pending acquisition of a search warrant. Furthermore, while we would normally expect police officers to secure a search warrant in considerably less time than was taken here, under the particular circumstances present here, we can not say that the delay in securing the December 31, 1991 warrant was so "unreasonable" as to violate the Fourth Amendment.

 Finally, the government argues that even a warrantless search of the UPS package would have been justified under the "plain view" exception to the warrant requirement, which "authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." *Il-*

linois v. Andreas, 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983).

In making this argument, the government points to Jacobsen. In that case, the Supreme Court ruled that when a private shipper opens a package, observes what it reasonably believes to be contraband, re-seals the package, and notifies police officials, the plain view exception allows the officials to re-open the package to confirm the shipper's suspicions. See 466 U.S. at 120–24, 104 S.Ct. 1652; see also United States v. Donnes, 947 F.2d 1430, 1434–35 (10th Cir.1991). The Court reasoned that, although the suspected contraband "was not itself in 'plain view' because it was still enclosed[,] . . . there was a virtual certainty that nothing else of significance was in the package and that a manual inspection of the [package] would not tell [the officer] anything more than he had already been told." Jacobsen, 466 U.S. at 119, 104 S.Ct. 1652. Because private actors opened the container initially and invited federal authorities to view its contents, there was no Fourth Amendment violation. Id.

Because we hold that the UPS package was seized under authority of a valid search warrant, we need not decide whether the plain view exception would have excused the police from securing a warrant prior to searching the package. We note, however, that the facts here are substantially different than in Jacobsen, where private actors "who were lawfully in possession of the package invited the agent to examine its contents [and] the government conduct was made possible only because private parties had compromised the integrity of the container." 466 U.S. at 120 n. 17, 104 S.Ct. 1652. In the present case, UPS did not open the package or invite the police to examine its contents. Instead, the police were alerted to the package's contents by Braddock, who had shipped it from Florida, and the package was intact when seized by the police. We are aware of no case that would extend Jacobsen to justify a warrantless search under these circumstances. See id. (indicating that police may not conduct warrantless search solely upon "learn[ing] from a private party that a container contains contraband"); United States v. Miller, 769 F.2d 554, 560 (9th Cir.1985) (no

exception to search warrant requirement for containers that "are discovered under circumstances supporting a strong showing of probable cause); United States v. Doe, 61 F.3d 107, 112 n. 8 (1st Cir.1995) (same); Donnes, 947 F.2d at 1438–39 (same).

## CONCLUSION

The judgment of the district court is affirmed.