**Gina MALAPANIS and Computers Plus Center, Inc.**

v.

**Gregg P. REGAN, et al.**

**No. 3:03CV1758 (JBA).**

United States District Court, D. Connecticut.

Sept. 14, 2004.

David S. Samuels, James A. Wade, Robinson & Cole, Hartford, CT, for Plaintiff.

Clare E. Kindall, Jane R. Rosenberg, Attorney General's Office, Peregrine Alban Zinn–Rowthorn, Attorney General's Office Special Litigation, James Sicilian, Cityplace I, Michael P. Shea, Day, Berry & Howard–Htfd–Ct, Hartford, CT, for Defendants.

### Ruling on Motion to Dismiss by Defendants Cabelus, Guida, and Gaffney [Doc. # 24]

ARTERTON, District Judge.

Plaintiffs commenced this suit to challenge the defendants' application for and execution of a search warrant and the seizure of their property as unlawful, and seek money damages and injunctive relief. Defendants Nancy Cabelus, William Guida, and Patrick Gaffney, officers with the Connecticut State Police, have moved to dismiss the claims against them. For the reasons discussed below, these defendants' motion [Doc. # 24] is GRANTED.

## I. Background

This action arises out of a dispute over computer equipment that plaintiffs Gina Malapanis ("Malapanis") and Computers Plus Center, Inc. ("CPC") sold to the State of Connecticut. According to plaintiffs' verified complaint, from 1993 to 2002, CPC was awarded several contracts to provide computers to various Connecticut state agencies. *See* Verified Complaint [Doc. # 1] at ¶¶ 16–18, 50–53, 95–96. Under one such contract awarded in approximately May 2002, CPC supplied five servers to the Connecticut Department of Information Technology ("DOIT"), which the DOIT claimed contained defective memory. *See id.* at ¶¶ 96–104. As a result of CPC's alleged impropriety with the servers, the DOIT disqualified CPC's pending bids on computer contracts with the state, listed CPC as a non-responsible bidder, and instituted an audit of all computers Malapanis and CPC supplied to every state agency in the preceding four year period. *See id.* at ¶¶ 112–113, 117.

On March 17, 2003, Gregg P. Regan, Chief Information officer for the DOIT, and Connecticut Attorney General Richard Blumenthal, held a press conference and issued a press release declaring that the state was initiating a civil action against CPC for "breaches of contracts for the provision of computer technology to the state," and accused Malapanis and CPC of "bilking the State out of more than a half million dollars, and possibly much more, worth of computer equipment by providing the State thousands of computers that did not contain specified parts, while fraudulently charging the State for the missing items." *Id.* at ¶ 142 (quoting Press Release). On the same day, Regan filed the civil action and an application for a prejudgment remedy against CPC in Connecticut Superior Court, attaching his own sworn affidavit in support. *See id.* at ¶¶ 143–44.

Plaintiffs allege that portions of Regan's affidavit in support of the PJR application were false. In particular, plaintiffs assert that Regan stated in his affidavit that Malapanis failed to provide two network adapter cards as required by the 2001 CPC Contract specifications, and that the state suffered monetary loss as a result of the server issue, but that at a later deposition, Regan testified that the 2001 CPC contract did not require two network adapter cards, and that the state suffered no financial loss as a result of the server issue. *See id.* at ¶¶ 145–46, 152.

Regan provided the same information to the Connecticut State Police in support of an application for a search warrant as he had in the PJR application. Relying on Regan's information, defendants Cabelus and Guida, Detectives with the Connecticut State Police, obtained a "mere evidence" search and seizure warrant for CPC's office and Malapanis' residence, on grounds that there was probable cause to believe that the property seized would lead to evidence of larceny. *See id.* at ¶ 159.

On March 13, 2003, defendants Gaffney, Cabelus, and Guida executed the search warrant on the premises of CPC and at Malapanis' residence, and seized all computers, files, pictures, CDs, and tapes from CPC. *See id.* at ¶ 165. Plaintiffs allege that the defendants also seized three safes from CPC's office, which were not authorized to be seized under the warrant. *See id.* at ¶¶ 166–671. According to the plaintiffs, after removing the safes, which caused damage to CPC's office, the Connecticut State Police obtained a new search warrant to open the safes. *See id.* at ¶ 168. Plaintiffs claim that as a result of the seizure of property, CPC has been unable to conduct its business and has suffered financial harm. *See id.* at ¶ 19.

Count 1 of plaintiffs' verified complaint is brought under 42 U.S.C. § 1983, and alleges a violation of Malapanis' Four-

teenth Amendment right to procedural due process; a violation of Malapanis' right to be free from unreasonable searches and seizures; abuse of power that is shocking to the conscience; and interference with Malapanis' ability to pursue a profession to contract with and deliver goods to state agencies in violation of her Fourteenth Amendment right to due process. *See id.* at ¶ 181. These claimed violations are based in part on plaintiffs' allegations that "[t]he CSP [Connecticut State Police] wrongfully and with reckless disregard for the truth seized Malapanis' property," and "refused to return the property even after it learned that the information it was provided by Regan and others was false." *Id.* at ¶ 180 (g), (h). Count 2 raises state constitutional claims. Plaintiffs seek, *inter alia*, money damages and an injunction ordering the Connecticut State Police defendants to return to CPC and Malapanis all property seized pursuant to the search warrants and to erase all records relating to the police investigation of CPC and Malapanis.

## II. Standard

When deciding a 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513–14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002);

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## III. Discussion

Defendants Cabelus, Guida, and Gaffney have asserted several grounds for dismissal of all claims against them. First, defendants argue that this Court should abstain from issuing an injunction under the doctrine set forth in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), because the plaintiffs are subjects of a pending criminal investigation.[1] Defendants also argue that the Eleventh Amendment prohibits the plaintiffs' claim for money damages against the State Police defendants in their official capacities, and that the State Police defendants are entitled to qualified immunity in their individual capacities from an award of money damages. Further, defendants argue that the plaintiffs' due process claim regarding the seizure of property is barred under *Parratt v. Taylor,* 451 U.S. 527, 541–55, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), because adequate post-deprivation state law remedies exist. To the extent the plaintiffs have raised a substantive due process claim in alleging that the State Police defendants abused their power in executing the search warrant, defendants argue that the claim is barred because the Fourth Amendment provides an explicit

---

1. At the time this issue was briefed, criminal charges had yet not been brought against Malapanis. On September 7, 2004, the State of Connecticut, Division of Criminal Justice, moved to intervene in this case and represented to the Court that in June 2004, Malapanis was charged in a single count information

with the crime of larceny in the first degree under Title 53a of the Connecticut General Statutes. In the three months since the criminal prosecution began, the parties have not supplemented their briefing to address *Younger* abstention in light of the new circumstance.

textual source for the constitutional protection against unreasonable searches and seizures.

In opposition, the plaintiffs clarified that their claims against the State Police defendants are grounded in two operative facts: the seizure of the safes from the CPC offices, which plaintiffs contend exceeded the scope of the search warrant in violation of the Fourth Amendment, and the failure to return plaintiffs' property subsequent to its seizure, which plaintiffs contend violates their Fourteenth Amendment due process rights.[2]

The Court concludes that the facts alleged by the plaintiffs fail to state a cognizable federal constitutional claim, and therefore dismisses all federal claims against the Connecticut State Police defendants. The Court declines to exercise supplemental jurisdiction over any remaining state claims against them. Because the Court finds that the merits of plaintiffs claims are lacking, it is unnecessary to address the procedural arguments and immunity claims raised by the defendants. *See, e.g. Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (courts should decide the merits of constitutional claim before reaching the issue of qualified immunity).

## A. Seizure of Safes

■ Plaintiffs allege that the safe was seized from the CPC office without a warrant. Plaintiffs acknowledge that the State Police defendants had a search warrant for the CPC premises and for Mala-

panis' residence, but argue that the police exceeded the scope of the search warrant in seizing the safes, as the safes were not identified in the warrants. It is well established that "[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross*, 456 U.S. 798, 820–821, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). As *Ross* explained:

> Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marihuana would also authorize the opening of packages found inside. A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

*Id.* at 821, 102 S.Ct. 2157.

On the facts alleged in plaintiffs' complaint, the safes could have been searched on the spot pursuant to the warrant issued

---

2. In their opening brief, defendants argued that plaintiffs failed to state a Fourth Amendment claim under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), because they did not allege that the affiants knowingly, or with reckless disregard for the truth, made false statements in the search warrant application. Defendants also argued that a *Franks v. Delaware* claim was barred by the doctrine of collateral estoppel,

as this claim was raised and denied in state court. In opposition, plaintiffs clarified that they were not making a *Franks v. Delaware* claim, and therefore this Court will not address this issue. To the extent plaintiffs' complaint could be construed as stating claims challenging the falsity of the search warrant application, these claims are deemed to be withdrawn.

for CPC premises. The "files, pictures, CDs, and tapes" that the police seized from CPC under the warrant, Verified Complaint [Doc. # 1] at ¶ 165, and which plaintiffs do not challenge, are small items that may be placed in a safe. The scope of a search is "not defined by the nature of the container," but "by the object of the search and the places in which there is probable cause to believe it may be found." *Ross*, 456 U.S. at 824, 102 S.Ct. 2157; *see also United States v. Snow*, 919 F.2d 1458, 1460 (10th Cir.1990) (concluding that the "F.B.I. did not exceed the scope of the authorized search" as the "locked safe [which was located on the premises identified in the search warrant] was a likely source for the specified documents and could therefore be opened."). Having a search warrant for the CPC premises, the Connecticut State Police defendants had probable cause to search all containers located within the premises in which the evidence of larceny could be found.

Instead of searching the safes on the spot, however, the State Police defendants seized them and obtained a new warrant to search them. Thus, while the police had probable cause to search the safes both pursuant to the first search warrant, under *Ross*, and as specifically set forth in the second search warrant, the initial warrant did not by its terms permit the seizure of the safes. The issue, therefore, is whether the initial seizure of the safes constituted an unreasonable seizure under the Fourth Amendment. The Court concludes that the warrantless seizure here, on the facts alleged by the plaintiffs, was not prohibited by the Fourth Amendment, as the seizure was justified in light of the exigencies of the situation.

"Where law enforcement authorities have probable cause to believe that a con-tainer holds contraband or evidence of a crime, but have not secured a warrant, the [Supreme] Court has interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *United States v. Martin*, 157 F.3d 46, 53 (2d Cir. 1998) (quoting *United States v. Place*, 462 U.S. 696, 701, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)). Among the exigencies that are well recognized as permitting the seizure of the container are where there is a risk of "loss or destruction of suspected contraband." *United States v. Jacobsen*, 466 U.S. 109, 114, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *Martin*, 157 F.3d at 53. Thus, in *Martin*, the Second Circuit approved the seizure of a UPS package pending a warrant to search it because a informant's tip provided probable cause to believe it contained contraband and the delivery of the package to its intended recipient would risk the destruction of this evidence. As the Supreme Court explained in *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), "[a] seizure affects only the person's possessory interests; a search affects a person's privacy interests. Recognizing the generally less intrusive nature of a seizure, the Court has frequently approved warrantless seizures of property, on the basis of probable cause, for the time necessary to secure a warrant .... Underlying these decisions is a belief that society's interest in the discovery and protection of incriminating evidence from removal or destruction can supercede, at least for a limited period, a person's possessory interest in the property, provided that there is probable cause to believe that the property is associated with criminal activity."[3] *Id.*

---

**3.** While *Soldal v. Cook County, Illinois*, 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992), clarified that a person's "possessory interest" implicates the Fourth Amendment even if there is no privacy interest, *Soldal* did

at 805, 808, 104 S.Ct. 3380 (citations omitted).

Plaintiffs' verified complaint states that the safes were taken from CPC premises, and acknowledges that search warrant identified the CPC premises as the location to be searched. As discussed *supra*, the police were lawfully present on the CPC premises and had probable cause to believe the safes, located inside the CPC offices, contained evidence of a crime. Because there was probable cause to search the safes, the exigencies of the situation permitted their seizure. It is not clear from plaintiffs' complaint whether the police seized the safes without searching them because they believed they needed a warrant to search them or because they were unable to open them at the time the safes were first encountered. Under either justification, however, seizure was permissible. In executing the search warrant on plaintiffs' property, the State Police defendants clearly revealed to plaintiffs their interest in evidence of larceny, and therefore would risk the removal or destruction of any evidence located inside the safes if they left the safes behind while waiting for a warrant to search them or for the means to open them.

Having probable cause to believe the safes contained evidence of a crime, the exigent circumstances theory supports the Connecticut State Police defendants' temporary seizure of the safes prior to obtaining a warrant specifically directed at the safes in question.

## B. Failure to Return Seized Property

■ Plaintiffs' remaining claims center on the failure of the Connecticut State Police defendants to return the seized computer equipment, files, and materials. As plaintiffs acknowledge, the failure to return property does not give rise to a Fourth Amendment violation because it does not bring "about an additional seizure nor change[ ] the character of the [original] seizure from a reasonable one to an unreasonable one because the seizure was already complete ...." *Fox v. Van Oosterum*, 176 F.3d 342, 350–51 (6th Cir.1999); *see also United States v. Jakobetz*, 955 F.2d 786, 802 (2d Cir.1992) (holding that the continued possession of photographs after criminal investigation completed is not a seizure "that deserves the special protections provided by the fourth amendment"); *Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir.2003) ("The [Fourth] amendment then cannot be invoked by the dispossessed owner to regain his property."). Plaintiffs allege, however, that the failure to return this seized property violates Malapanis's Fourteenth Amendment procedural and substantive due process rights.

While plaintiffs' verified complaint alleges a procedural due process violation, the basis for the claim is not well defined. Plaintiffs' opposition brief fails to respond to defendants' arguments, and never mentions procedural due process. The Court nonetheless construes the allegations that the defendants failed to return Malapanis' property even though criminal proceedings had not yet been instituted[4] and even

---

not disturb the Court's earlier holdings that a temporary warrantless seizure of a container is justified based on probable cause to believe the container contains evidence of a crime, if the police are lawfully present where the container is found and seizure is justified by the exigencies of the situation. *See id.* at 546 ("[I]n the absence of consent such seizures

can be justified only if they meet the probable-cause standard, and if they are unaccompanied by unlawful trespass.")

4. At the time plaintiffs instituted this suit, Malapanis had not yet been criminally charged.

after the State Police defendants learned that information in the search warrant application was false, *see* Verified Complaint [Doc. # 1] at ¶¶ 171–73; and the allegation that the State Police defendants refused to repair the damage caused by the dewiring and removal of the equipment seized from CPC, *see id.* at ¶ 176, to assert claims of denial of procedural due process.

Defendants argue that plaintiffs' procedural due process claim fails under *Parratt v. Taylor,* 451 U.S. 527, 541–45, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), because plaintiffs have access to meaningful post-deprivation state law remedies. In *Parratt,* the Supreme Court held that where the deprivation of property is "a result of a random and unauthorized act by a state employee," and "not a result of some established state procedure," an adequate post-deprivation state judicial remedy satisfies procedural due process. *See id.* at 541, 101 S.Ct.

1908. The Supreme Court extended its holding in *Parratt* to intentional deprivations of property in *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Here, plaintiffs have made no allegation that there is an established state policy to retain seized property after the completion of a criminal investigation or after falsity in the search warrant application comes to light, nor that the damage to their property was the result of an established procedure. At best, plaintiffs have alleged that their deprivation was the result of a random and unauthorized act by the State Police. Thus, the existence of an adequate post-deprivation state judicial remedy would satisfy procedural due process.[5] Defendants have argued that Connecticut provides such a post-deprivation procedure, citing Section 54–33f of the Connecticut General Statutes, which provides for the return of unlawfully seized property,[6] and Section 4–142 of the Con-

---

**5.** Because plaintiffs have not identified the particular nature of their procedural due process claim, the *Parratt–Hudson* doctrine may have limited applicability. For example, although plaintiffs acknowledge in their opposition to defendant's motion to dismiss that the Fourth Amendment, not the Due Process Clause, governs unlawful seizures of property, construed broadly, plaintiffs' claim may be based on Connecticut's established state policy of retaining seized property until the completion of the criminal action or the absence of a pre-deprivation hearing prior to the seizure of their property. Nonetheless, as Connecticut has procedures for the return of seized property, and these procedures have not been challenged as inadequate, plaintiffs' procedural due process claim lacks merit. When property is seized pursuant to a search warrant, adequate post-deprivation remedies satisfy procedural due process. *See, e.g. Fuentes v. Shevin,* 407 U.S. 67, 93–94 n. 30, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) ("[A] search warrant is generally issued to serve a highly important governmental need—e.g., the apprehension and conviction of criminals .... [A] search warrant is generally issued in situations demanding prompt action. The danger is all too obvious that a criminal will destroy or hide evidence or fruits of his crime

if given any prior notice.... [T]he Fourth Amendment guarantees that the State will not issue search warrants merely upon the conclusory application of a private party. It guarantees that the State will not abdicate control over the issuance of warrants and that no warrant will be issued without a prior showing of probable cause. Thus, our decision today in no way implies that there must be opportunity for an adversary hearing before a search warrant is issued."); *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 678, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) ("*Fuentes* reaffirmed, however, that, in limited circumstances, immediate seizure of a property interest, without an opportunity for prior hearing, is constitutionally permissible.").

**6.** Conn. Gen.Stat. § 54–33f provides for the return of unlawfully seized property as follows:

(a) A person aggrieved by search and seizure may move the court which has jurisdiction of such person's case or, if such jurisdiction has not yet been invoked, then the court which issued the warrant, or the court in which such person's case is pending, for the return of the property and to suppress for use as evidence anything so

necticut General Statutes, which provides a procedure by which a Claims Commissioner shall hear and determine all claims against the state, such as claims for damaged property. In addition, Conn. Gen. Stat. § 54–36a(c) provides that a court "at the final disposition of the criminal action or as soon thereafter as is practical, or, if there is no criminal action, at any time upon motion of the prosecuting official of such court, order the return of such property to its owner within six months upon proper claim therefor."[7] Plaintiffs have neither alleged in their complaint nor argued in their opposition to defendants' motion to dismiss that these post-deprivation remedies are inadequate. Accordingly, plaintiffs have failed to state a cognizable procedural due process claim.

■ Plaintiffs' substantive due process claims include that defendants' seizure of property has interfered with Malapanis' ability to pursue her profession, and that the seizure of property was the result of an abuse of power that is shocking to the conscience. Both of these claims lack merit.

Malapanis, alleging that she has not been able to operate her business because the Connecticut State Police defendants seized and failed to return their property, *see* Verified Complaint [Doc. # 1] at ¶ 167, relies on the Supreme Court's recognition that "the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the [due process clause]." *United States v. Robel*, 389 U.S. 258, 265 n. 11, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967) (quoting *Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959)). The Supreme Court, however, has made clear that the right to practice a chosen profession is "subject to reasonable government regulation." *Conn v. Gabbert*, 526 U.S. 286, 291–92, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999) (citations omitted). Moreover, reviewing its caselaw in this area, the Supreme Court emphasized that the right to practice one's profession has been afforded due process protection only where there is a "complete prohibition of the right to engage in a calling," not a "brief interruption." *Id.* at 292, 119 S.Ct. 1292. Thus, in *Conn*, the Supreme Court rejected plaintiff's claim of a substantive due process violation where he was prevented by the execution of a search warrant from representing his client who was testifying before the grand jury. The Court held that "the Fourteenth Amendment right to practice one's calling is not violated by the execution of a search warrant, whether calculated to annoy or even to prevent consultation with a grand jury witness," *id.* at 293, 119 S.Ct. 1292, because the execution of the search warrant comprised only a "brief interruption" in the plaintiff's professional practice, *id.* at 292, 119 S.Ct. 1292.

Here, while Malapanis has alleged an interruption in her ability to pursue her profession that is lengthier than that at issue in *Conn*, she has not alleged that the Government has completely prohibited her from engaging in her profession. Even construing plaintiffs' complaint

obtained on the ground that: (1) The property was seized without a warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) there was not probable cause for believing the existence of the grounds on which the warrant was issued, or (5) the warrant was illegally executed. In no case may the judge or judge trial referee who signed the warrant preside at the hearing on the motion.

7. The statute excepts from this return procedure property that is found to be stolen, or adjudicated a nuisance, contraband, subject to forfeiture, or a controlled substance, as these are subject to their own procedures. *See* Conn. Gen. St. § 54–36a(c).

broadly, it cannot be said that the defendants' retention of seized computer equipment is a government action that completely prevents Malapanis from engaging in her chosen profession. Malapanis has made no allegation that the Connecticut police defendants have barred her· from selling computer equipment.[8] At most, Malapanis has alleged that the failure to return her seized property has "substantially impaired" her ability to pursue her profession. *See* Memorandum in Support of Opposition to Motion to Dismiss by Defendants Cabelus, Guida, and Gaffney [Doc. # 36] at 12 n. 6. Plaintiffs have acknowledged that the Connecticut State Police defendants returned some of their seized property, and note that the state Criminal Court has ordered the return of all but one check located in the seized safes. *See* Verified Complaint [Doc. # 1] at ¶ 175 (acknowledging that the Connecticut State Police defendants returned "mirrored images of some of the equipment"); and ¶¶ 177–79 (stating that the Criminal Court ordered that the checks located in the safes be returned to CPC, but granted a TRO for the retention of one check in the amount of $495,000). While the seizures may· well have presented plaintiffs with· financial difficulties, the temporary seizure of property under a search warrant[9] does not rise to the level of a substantive due process violation. *See Conn*, 526 U.S. at 292, 119 S.Ct. 1292.

■ Plaintiffs' complaint also alleges broadly that the actions of the State Defendants "constituted a gross abuse of power that is shocking to the conscience." Verified Complaint [Doc. # 1] at ¶ 181(b). An "abuse of executive power so clearly unjustified by any legitimate objective of law enforcement [is] barred by the Fourteenth Amendment." *County of Sacramento v. Lewis*, 523 U.S. 833, 840, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). While the plaintiffs have neither identified in their complaint nor clarified in their opposition to defendants' motion the particular conduct of the Connecticut State Police defendants that is alleged to "shock the conscience," plaintiffs' allegation that they failed to return the seized property even after learning that information in the search warrant application was false, *see* Verified Complaint [Doc. # 1] at ¶¶ 172–73, is construed as the basis of their substantive due process claim.[10] "Substantive due

8. While plaintiffs claim that other defendants in this case have cancelled plaintiffs' contracts with the State of Connecticut, identified CPC as a "non-responsible bidder," and advised state agencies to "use caution" when dealing with plaintiffs, *see* Verified Complaint [Doc. # 1] at ¶¶ 133–136, these claims are not directed at the State Police defendants. Moreover, as these claims allege only that the plaintiffs lost the state as a customer, they fall far short of the kind of complete prohibition on the practice of a chosen profession entitled to substantive due process protection.

9. As discussed *supra*, Conn. Gen.Stat. § 54–36a(c) provides for the return of seized property after the completion of a criminal action.

10. Plaintiffs' opposition focuses their substantive due process argument on their right to pursue their chosen profession. *See* Memorandum in Support of Opposition to Motion

to Dismiss by Defendants Cabelus, Guida, and Gaffney [Doc. # 36] at 10–12. Nonetheless, as plaintiffs' complaint alleges both that defendants interfered with plaintiffs' ability to practice their chosen profession and that defendants' conduct "shocks the conscience," *see* Verified Complaint [Doc. # 1] at ¶ 181(b), (c), and as plaintiffs have insisted that they have not abandoned any of their due process claims, *see* Sur–Reply to Reply Memorandum in Further Support of Motion to Dismiss by Defendants Cabelus, Guida, and Gaffney [Doc. # 39] at 2, the Court declines to find that plaintiffs waived their due process claim based on a conscience-shocking abuse of governmental power. This Court has limited its review of the factual basis of plaintiffs' substantive due process claim, however, to that which was identified in plaintiffs' briefing. *See* Memorandum in Support of Opposition to Motion to Dismiss by Defendants Cabelus, Guida, and Gaffney [Doc. # 36] at 12 (stating

process is an outer limit on the legitimacy of governmental action. It does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action. Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir.1999) (citations omitted).

The failure to return seized property after learning that false information was relied on in the search warrant application does not satisfy this due process test. Plaintiffs' complaint alleges only that subsequent to the State Police defendants' execution of the search warrant, Malapanis' attorneys met with the State Police defendants, provided them with information regarding false material information supplied by Regan in support of the application for a search warrant, and requested that the seized property be returned on account of the false information in the

search warrant application. *See* Verified Complaint [Doc. # 1] at ¶¶ 171–72. Plaintiffs do not pursue in this action any claim that the search warrant was invalid or unsupported by probable cause,[11] nor do they claim that the state procedures for the return of seized property were inadequate. Having acted pursuant to a presumptively reasonable warrant,[12] the failure of the police defendants to return the seized property, even if they later learned of the falsities in the warrant application, is not so "outrageously arbitrary" that it shocks the conscience.[13] *See Natale,* 170 F.3d at 263.

## C. Remaining State Law Claims

As plaintiffs' Fourth Amendment and due process claims lack merit, the Court dismisses the federal § 1983 claims against defendants Cabelus, Guida, and Gaffney. Having dismissed the federal claims providing this Court with subject matter jurisdiction, this Court declines to exercise its supplemental jurisdiction over any remaining state law claims against these defen-

in support of substantive due process claim that the State Police defendants refused to return plaintiffs' property even though they knew that information relied on to obtain the warrant was false) (citing Verified Complaint [Doc. # 1] at ¶¶ 172–73).

**11.** While plaintiffs' complaint may be construed as alleging a Fourth Amendment violation based on *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), on grounds that the search warrant affidavit was false, plaintiffs clarified in their briefing that they have not made such a *Franks* claim. *See* Sur–Reply to Reply Memorandum in Further Support of Motion to Dismiss by Defendants Cabelus, Guida, and Gaffney [Doc. # 39] at 1. Plaintiffs unsuccessfully raised a *Franks* challenge in state court. *See* Memorandum of Decision on Petitioner's Motion for Return of Seized Property, Case Nos. 03–2721SW, 03–2598SW, Connecticut Superior Court, Hartford Judicial District [Doc. # 25, Ex. A].

**12.** *See Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991), cert. denied, 505 U.S.

1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992) ("[T]he issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause ...").

**13.** While it is not necessary to this decision, this Court takes judicial notice of the fact that the probable cause determination giving rise to the search warrants at issue here was upheld by the Connecticut Superior Court after the court discounted the allegedly false information provided by Regan. *See* Memorandum of Decision on Petitioner's Motion for Return of Seized Property, Case Nos. 03–2721SW, 03–2598SW, Connecticut Superior Court, Hartford Judicial District [Doc. # 25, Ex. A] at 9 ("Accordingly even if the assertion regarding the necessity of two NIC cards is excised from the warrant, ample probable cause remains for the issuance of a search warrant ...").

dants. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction over a claim where "the district court has dismissed all claims over which it has original jurisdiction"); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir.2003) (dismissal of federal claims at a relatively early stage in the proceedings supports denial of exercise of supplemental jurisdiction).

## IV.  Conclusion

For the foregoing reasons, the Motion to Dismiss by Defendants Cabelus, Guida, and Gaffney [Doc. # 24] is hereby GRANTED.

IT IS SO ORDERED.