**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0720n.06

**No. 11-5198**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | ***Jul 05, 2012*** |
| Plaintiff-Appellee, | ) | LEONARD GREEN, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ERIC J. BRADLEY, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  SILER, DAUGHTREY, and WHITE, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.  Defendant Eric J. Bradley pleaded guilty to a charge of receiving visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2), while reserving the right to appeal the district court's denial of his motion to suppress evidence obtained from his personal laptop computer.  Specifically, Bradley contends that the police violated the Fourth Amendment when they seized the laptop without a warrant, without his consent, and in the absence of exigent circumstances.  Because the district court did not clearly err when it determined that exigent circumstances existed, and because the manner and duration of the execution of the warrantless seizure was reasonable, we affirm the district court's denial of Bradley's motion to suppress.

## FACTUAL AND PROCEDURAL BACKGROUND

The evidence supporting the decision to deny Bradley's motion to suppress was summarized by the district court as follows:

This case arises from an investigation of the trading of child pornography online through Gnutella, a free, internet-based file sharing network. In October 2008, Attorney General Investigator Bell conducted an undercover investigation that targeted internet protocol ("IP") addresses that displayed hash values, commonly described as digital fingerprints, of known or suspected child pornography.

During the course of his investigation, Investigator Bell determined that a specific IP address in Fayette County had been observed displaying file names and hash values consistent with known or suspected child pornography, and that this IP address was assigned to a fire station located at 1098 South Cleveland Road in Lexington, Kentucky. After several unsuccessful attempts to connect to the publicly shared LimeWire folder of that computer, Bell filed an open records request with the Lexington Fire Department in an effort to match the dates he observed the computer running in LimeWire and displaying child pornography to the dates and shifts of any employees assigned to the fire station. He determined that all dates coincided with one specific crew assigned to the fire station.

Based on information from the Fire Department's Division of Internal Affairs, Investigator Bell and Attorney General Investigator Kathryn Reed traveled to the fire station on June 30, 2009. Following their arrival, Bell obtained a consent form from the defendant, Eric J. Bradley, to load an image scan onto his computer in order to access any child pornography that might have been present. For reasons unknown, the program was unable to load, and Investigator Bell was not able to view any images of child pornography. Investigator Bell then asked for Bradley's permission to examine his LimeWire.props file. Bradley verbally consented to that request and provided Investigator Bell with his password to access the data. After reviewing that section, Investigator Bell found the Globally Unique Identifier ("GUID"), which had been previously associated with downloading suspected child pornography files. Investigator Bell then asked to speak to Bradley privately. They went to another room at the station, and during their subsequent conversation, which occurred at approximately 2:30 p.m., Investigator Bell

> advised Bradley that he was seizing Bradley's computer and applying for a search warrant. Investigator Bell explained that the matching GUID indicated that the computer had displayed known child pornography images over the internet. Bradley denied any knowledge of child pornography on the computer and stated that he was the sole user of the computer with the exception of his fourteen-year old son, and that he did not have internet service at his home.

*United States v. Bradley*, No. 09-136-JBC, 2010 WL 2471885, at *1-*2 (E.D. Ky. June 16, 2010) (footnote omitted). Bell made no attempt to obtain a search warrant for the seized computer that afternoon. Instead, he applied for and received a state search warrant for the computer the next day. The forensic examination of the laptop "revealed approximately 50 videos and over 100 photographs containing suspected child pornography." *Bradley*, 2010 WL 2471885, at *2.

Bradley moved the district court to suppress all evidence obtained from the laptop computer, arguing that Bell had seized his computer without obtaining a search warrant and without Bradley's consent and that no exception to the warrant requirement applied. The district court made three findings. First, the district judge concluded that Bell had probable cause to believe that Bradley's computer held child pornography, based on the matching GUID numbers and Bradley's statement that only he and his 14-year-old son had access to the computer. *Id.* Second, the district court found that "Bell's concern that Bradley would destroy the computer and/or any evidence it contained constituted exigent circumstances." *Id.* at *3. Finally, the district court determined that the warrantless seizure of the laptop was "sufficiently limited in scope and timing" that the approximately 26-hour

delay was not unreasonable. *Id.* at *4. Based on these findings, the district court found the warrantless seizure reasonable and denied Bradley's motion to suppress. *Id.*

## DISCUSSION

The Fourth Amendment to the United States Constitution protects the people "against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure of personal property is "*per se* unreasonable . . . unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States v. Place*, 462 U.S. 696, 701 (1983). If law enforcement authorities have probable cause to believe a container holds evidence of a crime and the "exigencies of the circumstances demand it," seizure of the container pending issuance of a warrant to examine the contents is permitted. *Id.* (citing cases). However, "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on unreasonable seizures." *United States v. Jacobsen*, 466 U.S. 109, 124 (1984) (internal quotations omitted). The government has the burden of proving the legality of a warrantless search. *United States v. Beal*, 810 F.2d 574, 577 (6th Cir. 1987) (citing *United States v. Matlock*, 415 U.S. 164, 177 (1974)).

Bradley has never challenged the district court's finding that there was probable cause to believe that his laptop contained evidence of child pornography.[1] Thus, the only issues before us are whether exigent circumstances justified the warrantless seizure of Bradley's laptop and whether the manner and duration of the execution of the warrantless seizure were reasonable.

**Exigent Circumstances**

We review a district court's legal conclusion as to exigency *de novo*, but will disturb a district court's factual findings on the existence of exigent circumstances only if they are clearly erroneous. *United States v. Gaitan-Acevedo*, 148 F.3d 577, 585 (6th Cir. 1998). A finding is clearly erroneous if we are left with the "definite and firm conviction that a mistake has been committed" after viewing the entirety of the evidence. *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008) (quoting *United States v. Darwich*, 337 F.3d. 645, 663 (6th Cir. 2003)).

In reviewing the district court's findings that sufficient exigent circumstances existed to justify a warrantless seizure, we consider the "totality of the circumstances and the inherent necessities of the situation." *Brooks v. Rothe*, 577 F.3d 701, 708 (6th Cir. 2009) (citing *United States v. Rohrig*, 98 F.3d 1506, 1511 (6th Cir. 1996)). "The inquiry focuses

---

[1] In addition, we note that "because the officer[] obtained no new investigatory information between the time of the seizure and the time [he] applied for the search warrant, if there was probable cause to *search* the [laptop], there was ipso facto probable cause to *seize* the [laptop]." *United States v. Respress*, 9 F.3d 483, 486 (6th Cir. 1993). Bell testified that he obtained no relevant information in between the seizure of the computer and his submission of the application for a search warrant the next day.

not on an officer's subjective intentions, but on whether an objectively reasonable officer could have believed that exigent circumstances existed." *Brooks*, 577 F.3d at 708 (citing *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 999 (6th Cir. 1994)).

One of the recognized situations that may justify acting without a warrant is an "urgent need to prevent evidence from being lost or destroyed." *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1511 (6th Cir. 1988). To establish exigent circumstances under this exception, the government must first show "an objectively reasonable basis for concluding that the loss or destruction of evidence is imminent." *Id.* at 1512. Second, we must "balance the interests by weighing the governmental interest being served by the intrusion against the individual interest that would be protected if a warrant were required." *United States v. Plavcak*, 411 F.3d 655, 664 (6th Cir. 2005).

Thus, we first evaluate whether Bell had an objectively reasonable basis for concluding that the evidence of child pornography on the laptop would be destroyed if the computer was not seized immediately, pending application for a search warrant. The district court relied on the fact that Bell informed Bradley of the substance of his investigation and that Bradley's laptop contained the identifying marker the police were tracking. *Bradley*, 2010 WL 2471885, at *3. At the suppression hearing, Bell testified:

> Mr. Bradley and I discussed why I was there; that the software IP had matched what I had already had in my possession, that the investigation concerned child pornography. If I left the computer there, there was a good

chance or a probable chance that the hard drive could have been destroyed, tampered with, erased, and any evidence on it could have been destroyed.

Bradley now argues that Bell's fears were "completely speculative" and encourages us to adopt a rule requiring "independent objective evidence" that a defendant has an "imminent intent" to destroy evidence. However, we have already established that the appropriate inquiry when evaluating exigent circumstances is to consider the totality of the circumstances, *Plavcak*, 411 F.3d at 663, an inquiry that is at odds with a bright-line evidentiary requirement. *Cf. United States v. Canipe*, 569 F.3d 597, 601 (6th Cir. 2009) (noting that reasonableness of length of detention during traffic stop is not subject to a bright-line rule but focuses on the totality of the circumstances); *United States v. Luqman*, 522 F.3d 613, 616 (6th Cir. 2008) (observing that reasonable suspicion is judged by totality of the circumstances, not by bright-line rules).

We cannot say that the district court's determination that Bell reasonably feared Bradley would attempt to destroy the laptop or evidence on the laptop was clearly erroneous. Courts have doubted the wisdom of leaving the owner of easily-destructible contraband in possession of that contraband once the owner is aware that law-enforcement agents are seeking a search warrant. *See Illinois v. McArthur*, 531 U.S. 326, 332 (2001) (finding it reasonable for law enforcement to conclude that defendant suspecting an imminent search "would, if given the chance," get rid of contraband quickly). Had Bell left the laptop in Bradley's possession, Bradley could have attempted to destroy any computer files or the laptop itself. We agree with the district court below that it is

objectively reasonable to seize a container an officer has probable cause to believe contains evidence of a crime, rather than leave it unguarded in the hands of a suspect who knows that it will be searched.

Having determined that Bell's imminent fear that evidence would be destroyed was objectively reasonable, we next weigh the governmental interest being served by the intrusion against the individual's interest protected by requiring a warrant. *Plavcak*, 411 F.3d at 664. First, we recognize that courts are still struggling to conceptualize Fourth Amendment jurisprudence as applied to computers and the variety of interests implicated by seizures and searches of personal electronics. Some have analogized computers to closed containers. *See, e.g.*, *United States v. Al-Marri*, 230 F.Supp.2d 535, 541 (S.D.N.Y. 2002). However, owners often have more interest in their computers than they have in traditional closed containers like suitcases or trunks. A laptop is "likely to contain . . . non-contraband information of exceptional value to its owner." *United States v. Mitchell*, 565 F.3d 1347, 1351 (11th Cir. 2009); *see also id.* at 1352 (describing hard drive as the "digital equivalent of its owner's home, capable of holding a universe of private information") (citation omitted). *But see United States v. Arnold*, 533 F.3d 1003, 1010 (9th Cir. 2008) ("[C]ase law does not support a finding that a search which occurs in an otherwise ordinary manner, is 'particularly offensive' simply due to the storage capacity of the object being searched.") (citation omitted). In addition, we consider the fact that the governmental interest in protecting evidence from destruction is particularly high where digital evidence

is involved, because such evidence is inherently ephemeral and easily destructible. *See United States v. Abbell*, 963 F.Supp. 1178, 1199 (S.D. Fla. 1997) (noting that "computer evidence is particularly vulnerable . . . to tampering or destruction through error"). Thus, we note that, although there are strong personal interests that demand caution by police in seizing personal computers, the government's interest in preventing the destruction of evidence is equally strong when electronic evidence is at issue.

Second, we note that the government's interest in deterring the production and dissemination of child pornography is significant. *See United States v. Moore*, 916 F.2d 1131, 1139 (6th Cir. 1990) ("The Government maintains an extremely important interest in preventing the spread of child pornography and child sexual abuse.").

Finally, because Bell seized Bradley's computer but did not search it until he had acquired a search warrant, the initial seizure affected only Bradley's possessory interest in the laptop and did not implicate a privacy interest. *See Segura v. United States*, 468 U.S. 796, 810 (1984). Courts have considered this lesser interference as a factor when upholding warrantless seizures. *See Mitchell*, 565 F.3d at 1350 (finding that seizure of computer "to ensure that the hard drive was not tampered with before a warrant was obtained" was an interference with defendant's possessory interest); *United States v. Licata*, 761 F.2d 537, 541 (9th Cir. 1985) ("A seizure of a closed container affects only the owner's possessory interests and not the privacy interests vested in the contents.") (citation omitted). In addition, the district court correctly noted that, unlike luggage-seizure cases,

no liberty interest was impinged by the seizure of Bradley's laptop. *See United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998) (noting that seizure was more reasonable when "not a case where seizure of property would effectively restrain the liberty interests of the person from whom the property was seized, as is the case where officers seize a traveler's luggage and thereby cause disruption of his travel plans") (internal quotations and citation omitted); *United States v. LaFrance*, 879 F.2d 1, 8 (1st Cir. 1989) (in discussing *Place* factors, noting that "common sense insists that they be used more circumspectly, and weighed somewhat differently, where no liberty interest looms"). Thus, although the Fourth Amendment protects individuals from unreasonable interference with their possessory interests, in deciding what is reasonable, interference with possessory interests may well be less significant that interference with other rights.

In sum, considering the brief nature of the intrusion into Bradley's possessory interest and the fragility of electronic evidence, as well as the government's significant interest in curbing the spread of child pornography, we conclude that the government has established that its interests outweighed the individual interest at issue. Because the district court did not err when it found objectively reasonable Bell's conclusion that leaving the laptop with Bradley risked the imminent destruction of evidence, the balance of the interests justified the government's need to seize the laptop without a warrant. Hence, we agree with the district court's determination that exigent circumstances – together with

probable cause to believe that the laptop contained evidence of a crime – justified a warrantless seizure.

### *Reasonable Execution of Seizure*

Though the government met its burden by establishing that exigent circumstances existed to justify a warrantless seizure, "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on unreasonable seizures." *Jacobsen*, 466 U.S. at 124 (internal quotations omitted). Thus, we look at the totality of the circumstances to determine whether it was reasonable for Bell to seize the laptop immediately, rather than leave Agent Reed at the scene to observe Bradley's actions while he sought a search warrant, and then wait until the next day to apply for a search warrant, thereby depriving Bradley of his laptop overnight. *See Georgia v. Randolph*, 547 U.S. 103, 125 (2006) ("[T]his Court has continuously emphasized that 'reasonableness . . . is measured . . . by examining the totality of the circumstances.'") (Breyer, J., concurring) (citing *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)).

Bradley insists that the seizure was unreasonable in scope because another law enforcement officer, Agent Reed, was present and could have stayed at the firehouse "to secure the premises and/or the computer while the search warrant was obtained" in order to prevent any tampering with the computer or destruction of evidence. But, if Agent Reed

had remained on the premises to prevent Bradley from interfering with the computer, that, too, would have implicated Fourth Amendment concerns. *Segura*, 468 U.S. at 809 (upholding the "temporary securing of a dwelling to prevent the removal or destruction of evidence").

Moreover, the practicability of procuring a warrant, although not determinative, is still "a circumstance to be considered." *Niro v. United States*, 388 F.2d 535, 539 (1st Cir. 1968). Bradley cites to various cases that found a warrantless search or seizure unjustified because there was time for law enforcement officials to obtain a warrant. However, these cases address the inverse relationship between the availability of a warrant and the very existence of exigent circumstances. *See, e.g., United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994) (finding that exigent circumstances did not justify seizure of firearms because police had ample time to secure premises and obtain search warrant once victim was freed); *United States v. Lynch*, 934 F.2d 1226, 1233 (11th Cir. 1991) (rejecting as an exigent circumstance the assumption by police that suspects would grow suspicious and destroy evidence if they didn't hear from co-conspirators, when the police had "ample time and opportunity" to obtain warrant). In this case, exigent circumstances justified a warrantless seizure, but the cases on which Bradley relies do not help us determine whether the method of seizure chosen by Bell was reasonable.

The record does not include an explanation for Bell's failure to seek a warrant immediately. He indicated that he "probably" could have gotten access to a prosecutor the

same afternoon, but admitted that he had made no effort to contact anyone regarding an application for a warrant until the next day. Obviously, the better practice would have been to seek review sooner rather than later. *See United States v. McEachin*, 670 F.2d 1139, 1146 (D.C. Cir. 1981) ("We are . . . troubled, however, by Officer Oldham's apparent ignorance of the procedure for obtaining a telephonic warrant and by the Government's failure to introduce any evidence on the availability of such a warrant in this case."). Nevertheless, the Fourth Amendment does not require officers to engage in the least intrusive search or seizure. As the Supreme Court observed in *United States v. Sharpe*, 470 U.S. 675 (1985):

> A creative judge engaged in *post hoc* evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But the fact that the protection of the public might, in the abstract, have been accomplished by less intrusive means does not, itself, render the search unreasonable. The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it.

*Id.* at 686-87 (internal quotations and citations omitted). Although in hindsight we could recognize that the better path was to seek a warrant immediately, leaving an officer behind to prevent damage to the laptop or the evidence it contained, we cannot say that Bell was unreasonable in choosing to seize the laptop.

Our second inquiry into the reasonableness of the seizure is the length of time an object is seized. *LaFrance*, 879 F.2d at 6 ("[T]hough the duration of a detention is an

important consideration in evaluating the intrusiveness of a package's determent, it is neither the mirror image of unreasonableness nor the yardstick against which the suitability of police procedures must inevitably be measured."). The duration of the warrantless seizure in this case was approximately 26 hours. Seizures of this length have been upheld, particularly when the interest in question is possessory, as compared to a privacy or liberty interest. *United States v. Van Leeuwen*, 397 U.S. 249, 253 (1970) (upholding 29-hour detention of mailed package given unavoidable delay in obtaining warrant and minimal nature of intrusion); *United States v. Mayomi*, 873 F.2d 1049, 1054 (7th Cir. 1989) (upholding 48-hour detention of mailed packages, noting that privacy interest was not prematurely disturbed); *Martin*, 157 F.3d at 54 (upholding 11-day seizure given delays in ability to acquire warrant, the relinquishing of the container to the third-party United Parcel Service, and the interests at issue). As the Second Circuit observed in *Martin*, "[W]hile we would normally expect police officers to secure a search warrant in considerably less time than was taken here, under the particular circumstances present here, we can not say that the delay in securing the . . . warrant was so 'unreasonable' as to violate the Fourth Amendment." *Id.*

In addition, given the totality of the circumstances, it does not appear that Bell lacked diligence in applying for the search warrant within a reasonable time. *See Sharpe*, 470 U.S. at 687 ("Respondents presented no evidence that the officers were dilatory in their investigation."). There was no possibility of securing a warrant in advance. Before

- 14 -

going to the firehouse, the investigating officers suspected that someone who was assigned to the particular shift was involved in downloading child pornography, but they did not know which individual would be implicated, and they could not have known that Bradley would be present or that he would have his laptop with him. Nor could Bell have predicted that the standard image-scan program would not function and that Bradley would then consent to let Bell check the GUID, or that the GUID would match the one he was seeking. Moreover, the application for a warrant that Bell secured is over ten pages long and extensively detailed. Given these circumstances, we cannot say that Bell acted unreasonably in applying for the search warrant the next day.

Our decision in *Respress* supports this conclusion. There, we noted that the practice of seizing an item based on probable cause in order to obtain a search warrant had long been approved. 9 F.3d at 486 (citing cases). We then turned to the issue of whether the duration of the seizure pending the issuance of a search warrant was reasonable. We noted that "the time between the seizure of the suitcase and the issuance of the warrant was approximately ten hours, and, given the time of day, this was not an unreasonable length of time for preparing an affidavit, submitting it to a magistrate, having it reviewed, and getting the warrant issued." *Id.* at 488. Although the seizure here was longer, the intricacies of the warrant application, as well as the fact that Bell could not have known in advance that the laptop he was seeking would be present at the firehouse that afternoon, justified his decision not to pursue a search warrant so late in the day. As a

result, we uphold the district court's determination that the 26-hour delay was not unreasonable.

## CONCLUSION

For the reasons set out above, we AFFIRM the district court's judgment.