IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 18-0608

_____

FILED
**October 20, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

JOSHUA S. DEEM,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Harrison County
The Honorable Thomas A. Bedell, Judge
Criminal Action No. 18-F-17

AFFIRMED

_____

Submitted: September 22, 2020
Filed: October 20, 2020

George J. Cosenza, Esq.
Cosenza Law Office
Parkersburg, West Virginia

Counsel for the Petitioner

Patrick Morrisey, Esq.
Attorney General
Mary Beth Niday, Esq.
Assistant Attorney General
Caleb A. Ellis, Esq.
Assistant Attorney General
Charleston, West Virginia

Counsel for the Respondent

JUSTICE WALKER delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error." Syllabus Point 1, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996).

2. "In contrast to a review of the circuit court's factual findings, the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo*. Similarly, an appellate court reviews *de novo* whether a search warrant was too broad. Thus, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made." Syllabus Point 2, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996).

3. "'Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment and

Article III, Section 6 of the West Virginia Constitution—subject only to a few specifically established and well-delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption that the exigencies of the situation made that course imperative.' Syllabus Point 1, *State v. Moore*, 165 W.Va. 837, 272 S.E.2d 804 (1980), *overruled in part on other grounds by State v. Julius*, 185 W.Va. 422, 408 S.E.2d 1 (1991)." Syllabus Point 20, *State v. Ladd*, 210 W. Va. 413, 557 S.E.2d 820 (2001).

4.    "The existence of a reasonable belief should be analyzed from the perspective of the police officers at the scene; an inquiring court should not ask what the *police* could have done but whether they had, at the time, a reasonable belief that there was a need to act without a warrant." Syllabus Point 7, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996).

WALKER, Justice:

Police seized Petitioner Joshua Deem's (Deem) cell phone without a warrant while investigating the solicitation of a minor. Based primarily on evidence later obtained from the cell phone pursuant to a warrant, Deem was convicted of one count of attempting to solicit a minor using a computer. Deem now asks us to overturn his conviction and vacate his sentence because, he argues, the warrantless seizure of his cell phone was unreasonable and so violated his Fourth Amendment rights. We disagree: the seizure was reasonable under the exigent circumstances exception to the warrant requirement and did not offend the Fourth Amendment. So, we affirm the circuit court's August 9, 2018 sentencing order.

## I. Facts and Procedural History

The State prevailed below on Deem's motion to suppress, so we construe all facts in its favor.[1] On December 13, 2016, the Bridgeport Police Department noticed an advertisement on Craigslist titled, "Speed for You," in which Deem sought contact with a girl or group of women. Adopting the persona of a fifteen-year old girl (Minor), Lieutenant Gary Weaver (Lt. Weaver) responded "YO 15 F BPORT," and "What's up?" through the Craigslist messaging feature. Minor and Deem conversed over Craigslist for the next few

---

[1] Syl. Pt. 1, in part, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996) (stating that "[w]hen ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party, below."). We rely upon Lt. Weaver's testimony to the circuit court during the March 2018 hearing on Deem's motion to suppress.

days. Deem asked Minor for explicit photographs, explaining that if she would send the photos, then he wished to meet her and have sex. At Deem's request, the conversation moved to text messages. As Deem and Minor continued to text, she received his messages from different cell phone numbers. Lt. Weaver determined that Deem was using the TextNow App to change the numbers, although he could still tell from the messages' content that Deem was the sender. For example, in one of the messages Deem asked Minor for nude photos once again.

Lt. Weaver served an administrative subpoena on Craigslist to find out who had posted the "Speed for You" ad. Craigslist responded with the email address, joshdeem1990@****.com, and telephone number, 304-9**-1***. In January 2017, Minor started to receive text messages from 304-9**-1***. It was not hard to deduce that Deem was using that number to correspond with Minor: when she asked the user of that number to identify himself, the user responded, "Josh." Lt. Weaver later confirmed that 304-9**-1*** was a real, AT&T cell phone number used by Deem at that time.

Deem, using the 304-9**-1*** number, sent Minor a message on February 1, 2017. The next day, Lt. Weaver, Detective Travis Wolfe of the Parkersburg Police Department, and Trooper Jennifer DeMeyer of the West Virginia State Police went to Deem's home. It was cold outside, so when Deem came to the door, the officers asked if they could go into the house or talk in one of the officers' cars. Deem let the officers inside.

2

Deem, his father, and the officers went to the family room. When Lt. Weaver asked Deem for his cell phone number, Deem gave him 304-4**-1***. Deem then admitted to using 304-9**-1***, but claimed that he had not used that number for a long time. Then, Deem and the officers left Deem's father and went to another room. Once there, Lt. Weaver explained "that this was [his] investigation, this is what I was looking into [sic], this is a little bit of the information that I have." He then asked Deem about email addresses. Deem stated that he used the email address, jdeem2016@****.com, but that he did not know about the joshdeem1990@****.com address. Deem admitted that he "randomly" placed some ads on Craigslist. When Lt. Weaver asked Deem if he had another cell phone, Deem said that he had another phone, but that it had stopped working some months ago.

Lt. Weaver observed a cell phone in Deem's pocket. When Lt. Weaver asked Deem about it, Deem responded that it was an AT&T Android phone. The officers asked Deem to give them the phone, but he refused. Det. Wolfe attempted to move the interview along by calling 304-9**-1*** from his cell phone. The phone in Deem's pocket rang. Deem got the phone out and Lt. Weaver, standing right beside Deem, saw "Unknown" on the phone's display. Det. Wolfe displayed his own phone and said, "Hey, that's me calling." Lt. Weaver testified that Deem returned the phone to his pocket, but not before his hand moved on to the screen of the phone.

3

Based on training and experience, Lt. Weaver knew that a person can easily delete information stored in a phone. Acting on that training and experience, Lt. Weaver explained to Deem, "Hey, listen, we've got to take the phone. We can't look at it. We have to do a search warrant to look at it, but we have reason to believe there's evidence on there." He asked Deem for the phone again, but Deem still refused. Lt. Weaver then seized the phone from a resistant Deem. Two days later, authorities obtained a warrant, searched Deem's phone, and found incriminating evidence.

In January 2018, a Harrison County grand jury indicted Deem on one count of using a computer to attempt to solicit a minor believed to be at least four years younger than himself in violation of West Virginia Code § 61-3C-14b (2016).[2] In February 2018,

---

[2] Section 61-3C-14b states:

> (a) Any person over the age of eighteen, who knowingly uses a computer to solicit, entice, seduce or lure, or attempt to solicit, entice, seduce or lure, a minor known or believed to be at least four years younger than the person using the computer or a person he or she believes to be such a minor, in order to engage in any illegal act proscribed by the provisions of article eight [§§ 61-8-1 et seq.], eight-b [§§ 61-8B-1 et seq.], eight-c [§§ 61-8c-1 et seq.] or eight-d of this chapter [§§ 61-8D-1 et seq.], or any felony offense under section four hundred one [§ 60A-4-401], article four, chapter sixty-a of this code, is guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000 or imprisoned in a state correctional facility not less than two nor more than ten years, or both.

> (b) Any person over the age of eighteen who uses a computer in the manner proscribed by the provisions of subsection (a) of this section and who additionally engages in

Deem moved to suppress all evidence obtained from the search of his cell phone. Deem argued that the plain view exception to the warrant requirement did not cover Lt. Weaver's seizure of his phone. The State responded that Lt. Weaver had not run afoul of the Fourth Amendment because the seizure was reasonable under both the plain view and exigent circumstances exceptions.[3]

The circuit court conducted a hearing on Deem's motion in March 2018. Deem contended that the officers should have obtained a search warrant before seizing the cell phone and that there were no exigent circumstances to justify its seizure. He also argued that before the officers went to his house, they knew that his cell phone might contain evidence of a crime and that "[t]hey had ample probable cause to go ahead and get a search warrant . . . ." Alternatively, Deem asserted that once the officers observed the phone in his pocket, they could have detained him while someone left to get a warrant. The

---

> any overt act designed to bring himself or herself into the minor's, or the person believed to be a minor's, physical presence with the intent to engage in any sexual activity or conduct with such a minor that is prohibited by law, is guilty of a felony and shall be fined not more than $25,000 or imprisoned in a state correctional facility for a determinate sentence of not less than five nor more than thirty years, or both: Provided, That subsection (a) shall be deemed a lesser included offense to that created by this subsection.

[3] Deem also moved to suppress evidence obtained from the cell phone on the grounds that the affidavit provided in support of the application for the search warrant did not establish probable cause. The circuit court denied this motion and Deem does not appeal that ruling.

State responded that Lt. Weaver had reacted to the situation before him based on his experience that the kind of evidence he suspected was in Deem's phone is frequently removed, altered, or destroyed. The State argued that the plain view exception to the warrant requirement also applied to the seizure. The circuit court denied Deem's motion from the bench, seemingly based on the plain view exception to the warrant requirement.[4] The court entered an order reflecting that ruling on March 26, 2018.

In March 2018, Deem was convicted on the single count of the indictment after a two-day trial. The circuit court entered its Second Amended Order Following

---

[4] The circuit court applied our analysis of the plain view exception to the warrant requirement as stated in Syllabus Point 3 of *State v. Farley*, 167 W. Va. 620, 280 S.E.2d 234 (1981) ("A warrantless seizure of property in plain view is constitutionally permissible provided three requirements are met: "(1) the police must observe the evidence in plain sight without benefit of a search [without invading one's reasonable expectation of privacy], (2) the police must have a legal right to be where they are when they make the plain sight observation and, (3) the police must have probable cause to believe that the evidence seen constitutes contraband or fruits, instrumentalities or evidence of crime." Syl. Pt. 7, *State v. Moore*, W.Va., 272 S.E.2d 804 (1980), quoting, Syl. pt. 3, in part, *State v. Stone*, W.Va., 268 S.E.2d 50 (1980)."). We recast that test ten years later, in Syllabus Point 3 of *State v. Julius*, 185 W. Va. 422, 408 S.E.2d 1 (1991) ("The essential predicates of a plain view warrantless seizure are (1) that the officer did not violate the Fourth Amendment in arriving at the place from which the incriminating evidence could be viewed; (2) that the item was in plain view and its incriminating character was also immediately apparent; and (3) that not only was the officer lawfully located in a place from which the object could be plainly seen, but the officer also had a lawful right of access to the object itself."). Because we do not rely on the plain view exception to the warrant requirement to resolve Deem's appeal, the circuit court's application of Syllabus Point 3 of *Farley*, rather than Syllabus Point 3 of *Julius*, does not affect our decision to affirm the circuit court's denial of Deem's motion to suppress.

6

Sentencing Hearing/Order Placing Defendant on Supervised Probation on August 9, 2018,[5] in which it ordered that Deem was to serve not less than two nor more than ten years of incarceration. The court then suspended that sentence and placed Deem on supervised probation for three years. Deem now appeals from the circuit court's August 9, 2018 Order.

## II. Standard of Review

When reviewing a ruling on a motion to suppress, we take the facts in the light most favorable to the State, review the circuit court's factual findings for clear error, and conduct a de novo review of the determination of whether the search or seizure violated the Fourth Amendment. We detailed that standard of review in Syllabus Points 1 and 2 of *State v. Lacy*:

> When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.
>
> In contrast to a review of the circuit court's factual findings, the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo*. Similarly, an appellate court reviews *de novo* whether

---

[5] The circuit court entered an Order Following Sentencing Hearing/Order Placing Defendant on Supervised Probation on June 7, 2018, and an Amended Order Following Sentencing Hearing/Order Placing Defendant on Supervised Probation on June 19, 2018.

a search warrant was too broad. Thus, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made.[6]

## III.  Discussion

Deem does not challenge the circuit court's factual findings so we limit our review to the constitutional question:  did the temporary warrantless seizure of his cell phone violate his Fourth Amendment rights?   After analyzing the totality of the circumstances Lt. Weaver faced during his February 2, 2017, encounter with Deem, we find that his belief that he had to act quickly to secure Deem's cell phone to prevent the destruction of potential evidence was reasonable.[7]   So, we affirm the circuit court's conclusion that the seizure did not violate the Fourth Amendment.

---

[6] Syl. Pts. 1 and 2, *Lacy*, 196 W. Va. at 104, 468 S.E.2d at 719.

[7] The circuit court found the seizure to be reasonable under the plain view exception to the warrant requirement.  We may, however, affirm that judgment on "'any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment.'" *State v. Coles,* 234 W. Va. 132, 139 n.18, 763 S.E.2d 843, 850 n.18 (2014) (quoting Syl. Pt. 3, *Barnett v. Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466 (1965)).  The State argued before the circuit court that both the plain view and exigent circumstances exceptions to the warrant requirement justified the seizure of Deem's cell phone.  Therefore, although the circuit court relied on the plain view exception, we may affirm based on the exigent circumstances exception.

The Fourth Amendment to the United States Constitution[8] and the near-identical Article III, Section 6 of the West Virginia Constitution[9] protect against unreasonable searches and seizures. A warrant issued for probable cause is the presumptive means of ensuring that a search or seizure is reasonable and does not offend those protections.[10] But, presumptions are not absolute and as we have explained in the Fourth Amendment context, there are some exceptions recognizing certain exigencies:

> "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment and Article III, Section 6 of the West Virginia Constitution—subject only to a few specifically established and well-delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption that the exigencies of the situation made that course imperative." Syllabus Point 1, *State v. Moore*, 165 W.Va. 837, 272 S.E.2d

---

[8] U.S. Const. amend. 4 ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.").

[9] W. Va. Const. art. III, § 6 ("The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized.").

[10] *Lacy*, 196 W. Va. at 112, 468 S.E.2d at 727 ("Indeed, the touchstone of the Fourth Amendment's promise is 'reasonableness,' which generally, though not always, translates into a warrant requirement.") (citing *Vernonia School Dist. 47J v. Acton,* 515 U.S. 646 (1995)).

804 (1980), *overruled in part on other grounds by State v. Julius*, 185 W.Va. 422, 408 S.E.2d 1 (1991).[11]

Exigent circumstances "may exist . . . when police reasonably believe [that] quick action is necessary to prevent the destruction of potential evidence . . . ."[12] "The test for the existence of exigent circumstances is whether the facts would lead a reasonable, experienced police officer to believe the evidence might be destroyed or removed before a warrant could be secured."[13] "The existence of a reasonable belief should be analyzed from the perspective of the police officers at the scene; an inquiring court should not ask what the *police* could have done but whether they had, at the time, a

---

[11] Syl. Pt. 20, *State v. Ladd*, 210 W. Va. 413, 557 S.E.2d 820 (2001) (emphasis added). *See also Kentucky v. King*, 563 U.S. 452, 460 (2011) ("One well-recognized exception applies when the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment.") (internal quotations and alterations omitted).

[12] *State v. Kendall*, 219 W. Va. 686, 692, 639 S.E.2d 778, 784 (2006) (quoting *State v. Buzzard*, 194 W. Va. 544, 549 n.11, 461 S.E.2d 50, 55 n.11 (1995)). *See also Lacy*, 196 W. Va. at 112 n.7, 468 S.E.2d at 727 n.7 (noting that "[r]ecognized situations in which exigent circumstances exist include: danger of flight or escape; danger of harm to police officers or the general public; risk of loss, destruction, removal, or concealment of evidence; and hot pursuit of a fleeing suspect").

[13] *Lacy*, 196 W. Va. at 112 n.7, 468 S.E.2d at 727 n.7.

reasonable belief that there was a need to act without a warrant."[14] Ultimately, the test for

exigent circumstances is an objective one based on the totality of the circumstances.[15]

Numerous federal Courts of Appeal faced with the warrantless seizure of a

digital device have turned, as we do in this case, to the exigent circumstances exception to

the warrant requirement.[16] For example, in *United States v. Burton*, the Fourth Circuit

applied the exception to Burton's cell phones, which police seized while investigating

allegations that he had used a cell phone to take pictures underneath a woman's skirt while

---

[14] Syl. Pt. 7, *Lacy*, 196 W. Va. at 104, 468 S.E.2d at 719 (emphasis in original).

[15] *See* Syl. Pt. 6, in part, *Kendall*, 219 W. Va. at 686, 639 S.E.2d at 778 (stating that the test for exigent circumstances "is an objective test based on what a reasonable, well-trained police officer would believe"); *cf.* Syl. Pt. 2, in part, *State v. Canby*, 162 W. Va. 666, 252 S.E.2d 164 (1979) (stating that "[t]he test of exigent circumstances for the making of an arrest for a felony without a warrant in West Virginia is whether, under the totality of the circumstances, the police had reasonable grounds to believe that if an immediate arrest were [sic] not made, the accused would be able to destroy evidence . . . . This is an objective test based on what a reasonable, well-trained police officer would believe.").

[16] *See United States v. Brown*, 701 F.3d 120, 127 (4th Cir. 2012) ("[I]t was entirely reasonable for the officers to seize Brown's laptop—as they did—to prevent either it or its contents from being damaged or destroyed."); *United States v. Bradley*, 488 F. App'x 99, 103 (6th Cir. 2012) ("[I]t is objectively reasonable to seize a [computer] an officer has probable cause to believe contains evidence of a crime, rather than leave it unguarded in the hands of a suspect who knows that it will be searched."); *United States v. Blood*, 429 F. App'x 670, 671 (9th Cir. 2011) (unpublished opinion involving child pornography) (stating that "[t]he fragile and easily destructible nature of the digital evidence at issue raises undeniable concerns regarding 'loss or possible destruction of contraband by the owner'") (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)). The United States Supreme Court recognized that seizure of cell phones in a similar situation was appropriate in order to prevent destruction of evidence pending the subsequent procurement of a search warrant. *See Riley v. California*, 573 U.S. 373, 388 (2014) (noting the petitioner's "sensible concession" that officers "could have seized and secured their cell phones to prevent destruction of evidence while seeking a warrant.").

11

she shopped for groceries.[17] During a voluntary interview with police, Burton denied taking any photos, but admitted to "crouching behind [the woman] at the store with a cell phone in his hand . . . ."[18] He also told police that "he had two employer-issued cell phones with him during the grocery store incident, and that one of the phones had both a camera and email functionality. Burton brought both phones to the initial interview."[19] An officer seized the phones, later testifying that he did so with probable cause and to allay his fear that if he did not take the phones, Burton would destroy any pictures in them.[20] Authorities recovered lewd pictures from Burton's cell phone pursuant to a search warrant.[21] Next, they used that evidence to obtain a warrant to search Burton's home, including the contents of electronic devices found there.[22] Authorities recovered images of child pornography from Burton's electronic devices.[23] Following an unsuccessful motion to suppress, Burton entered a conditional guilty plea to a single count of possession of child pornography.[24]

---

[17] *United States v. Burton*, 756 F. App'x 295, 297 (4th Cir. 2018), *cert. denied,* 139 S. Ct. 1636 (2019).

[18] *Id.*

[19] *Id.* (internal note omitted).

[20] *Id.*

[21] *Id.*

[22] *Id.* at 298.

[23] *Id.*

[24] *Id.*

The Fourth Circuit rejected Burton's argument on appeal that the exigent circumstances exception to the warrant requirement could not justify the seizure of his cell phones.[25] The court detailed the circumstances surrounding the seizure of Burton's phones that gave the officer "'good reason to fear' that Burton would destroy digital evidence if allowed to depart the police station with the phones":[26]

> Following the initial interview, Burton was aware that he was the subject of an investigation into his use of cell phones to take up-skirt photos, and also knew that Myrick was skeptical of Burton's description of the grocery store incident. Given the ease with which Burton could have deleted, transferred, or otherwise removed the digital photos from the phones, Myrick reasonably assumed that Burton might destroy any evidence contained on the phones, or the devices themselves. And finally, Myrick made sufficiently "reasonable efforts" to balance law-enforcement needs with Burton's Fourth Amendment rights. Myrick conducted a voluntary interview with Burton, did not immediately place Burton under arrest, and waited to seize the phones until after investigating the victim's allegations and providing Burton with an opportunity to give his version of the events.[27]

The Eleventh Circuit recently affirmed the warrantless, temporary seizure of a suspect's cell phone in circumstances similar to those in *Burton* and this case. In *United States v. Babcock*, police responded to a disturbance at Babcock's camper, where they

---

[25] *Id*.

[26] *Id*. at 299 (quoting *Illinois v. McArthur*, 531 U.S. 326, 332 (2001)).

[27] *Id*. at 299 (internal citations, quotations, and note omitted).

13

found Babcock and a minor girl with blood on her thigh.[28]  Babcock showed an officer a video on his phone of the minor holding a knife to her throat and threatening to kill herself, apparently attempting to explain the blood.  Babcock permitted the officer to keep the phone so she could show the video to a colleague.[29]  When another officer asked Babcock to look at other content on the phone, Babcock refused and asked for the phone back.[30] The officer kept it, obtained a warrant to search the phone's contents, and found graphic photos and videos of the minor girl within.[31]

Babcock later moved to suppress the evidence culled from the phone.  The district court denied the motion and Babcock entered a conditional guilty plea to two counts of producing a visual depiction of sexually explicit content with a minor in violation of 18 U.S.C. § 2251(a), (e).[32]  The Eleventh Circuit affirmed the lower court's ruling, easily identifying the facts that created the exigent circumstances that made the seizure reasonable:

> Given the facts here, a reasonable, experienced agent certainly could have believed that Babcock—the suspect, not a mere bystander—would delete any incriminating evidence on his

---

[28] 924 F.3d 1180, 1184–85 (11th Cir. 2019).

[29] *Id*. at 1185.

[30] *Id*.

[31] *Id*.

[32] *Id*. at 1185–86.

phone before a warrant could be obtained. For starters, Babcock had tried to deceive the responding officers from the get-go, denying that anyone else was in his camper, reporting that C.A. had randomly shown up at his house in the middle of the night, and claiming that he didn't know her age—all lies. Moreover Babcock surely knew that he was under suspicion once Detective Broughton asked to search the camper and to further inspect his phone. Finally, of course, and on top of all that, the electronic files on Babcock's phone could have been quickly destroyed while the search was progressing. All told, . . . it was reasonable for the officers here to conclude that Babcock had the ability and incentive to, after learning of the investigation into his relationship with C.A., destroy damning information contained on his phone. That's all the exigent-circumstances doctrine requires.[33]

The facts and circumstances of the seizure of Deem's cell phone are equally compelling. They would certainly lead a reasonable, experienced police officer standing in Deem's living room to believe that if he did not act quickly and seize the cell phone, Deem would delete or destroy potential evidence in it before a warrant could be obtained. First, Deem had already tried to deceive the officers. He lied about his current cell phone number and denied knowing about the joshdeem1990@****.com email account. Deem knew the nature of Lt. Weaver's investigation and that it had turned up the 304-9**-1*** cell phone number. Deem also knew that Lt. Weaver had observed a cell phone in his

---

[33] *Id*. at 1194–95 (internal quotations, alterations, and note omitted). The Eleventh Circuit also analyzed whether the police had probable cause to believe that Babcock's cell phone contained evidence of a crime. *See id.* at 1186 (stating that "absent either a warrant or probable cause plus an exception, police may not seize private property"). Sensibly, Deem does not challenge on appeal Lt. Weaver's belief that evidence of Deem's solicitation of Minor was probably in his phone.

pocket and that he believed that particular phone contained evidence pertinent to his investigation. In addition, Deem had shown that he was technologically savvy by strategically using the TextNow App to send Minor messages from different cell phone numbers, an obvious attempt to evade detection. Finally, the potential evidence on Deem's phone could have been quickly damaged or destroyed, something that a reasonable and experienced officer would have recognized.

Those particular facts gave Deem every incentive to destroy or damage the evidence that authorities later recovered from the cell phone.[34] Viewed in their totality, and combined with the fragility of any evidence contained in Deem's phone, the particular circumstances detailed above would lead a reasonable, experienced officer to believe that the warrantless seizure of Deem's cell phone was necessary to prevent the destruction of or damage to potential evidence within.[35]

---

[34] *Cf. McArthur*, 531 U.S. at 332 (stating authorities "reasonably could have concluded that McArthur, consequently suspecting an imminent search, would, if given the chance, get rid of the drugs fast"); *Crocker v. Beatty*, 886 F.3d 1132, 1136 (11th Cir. 2018) (stating that, "[f]or obvious reasons, evidence is more likely to be destroyed when it is in the possession of a person who may be convicted by it").

[35] Deem makes a cursory citation to *Missouri v. McNeely*, 569 U.S. 141 (2013), but offers no analysis of the case except to quote a single sentence and state that "[t]he same logic applies to the case at bar." We cannot analyze an argument that Deem does not make. *See State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("In addition to the above assignments, the defendant raises some half-hearted assignments that were not fully developed and argued in the appellate brief. Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on

## IV. CONCLUSION

For the reasons discussed above, we find no error in the circuit court's denial of Deem's motion to suppress and affirm the Second Amended Order Following Sentencing Hearing/Order Placing Defendant on Supervised Probation of August 9, 2018.

Affirmed.

---

appeal.") (citing *State v. Lilly*, 194 W.Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) ("casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal")).

Giving Deem the benefit of doubt, however, we observe that the issue in *McNeely* was whether "the natural metabolization of alcohol in the bloodstream presents a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." *McNeely*, 569 U.S. at 146. That is not the issue presented here. The State did not ask this Court for a per se rule and we do not make one. Rather, our ruling depends on an objective assessment of the totality of the facts and circumstances of this particular case.