NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0552n.06

Case No. 21-5384

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Dec 01, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| JOHNATHAN SCOTT MASON, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: SUTTON, Chief Judge; STRANCH and BUSH, Circuit Judges.

SUTTON, Chief Judge. Johnathan Mason challenges the district court's denial of his motion to suppress evidence, arguing that law enforcement officers violated the Fourth Amendment when they entered an apartment and seized his cell phone without a warrant. Mason also contests the length of his sentence. Because he offers no convincing reason for disturbing the district court's decision to deny his motion or to sentence him within the guidelines, we affirm.

I.

The Department of Homeland Security sent Craig Miller, a member of the Kentucky State Police, a referral on March 24, 2020, flagging that a user of two social media applications had expressed sexual interest in children over the preceding two months. The user wrote online that he made "content" of his seven-year-old and ten-year-old stepdaughters, that he had images of the older child—whom he would "mess" with in her sleep—with her hands down her pants, and that

he had uploaded content to a file hosting site. R.58 at 8, 10–11. One of the applications disclosed that the account holder used a cell phone to access the application and registered with an e-mail address bearing Johnathan Mason's name.

Officer Miller's investigation of the content on the file hosting site revealed images of the older child asleep with her hand down her pants along with images of other children, including some of a younger child naked from the waist down. Officer Miller identified the mother of the children using information shared by the user on the file hosting site. The mother's Facebook page suggested that she and Mason were in a romantic relationship.

Concerned for the children's welfare, Miller and another officer visited the mother's residence on March 25. After the officers explained the reason for their visit, she said she would not be surprised if Mason took and shared images of her children. She explained that she found Mason transferring pictures from her computer to his phone the week before and that he would not let her see the phone when she asked if the pictures portrayed her daughters. After asking Mason to clear his phone of any such images, she asked him to move out, ending their relationship. The woman directed the officers to the apartment complex where Mason moved and gave them a description of Mason's vehicle.

The officers located a vehicle matching that description in front of an apartment at the complex. They decided to conduct a knock-and-talk encounter. After a female occupant answered the door, Officer Miller identified himself, explained the purpose of his visit, and asked for Mason. The woman said that she did not live at the apartment and would get someone who could make decisions. She called a man to the door. Officer Miller again explained the purpose of his visit. The man confirmed Mason's presence in the apartment and became angry. He invited the officers to enter the apartment and to "get [Mason] out." *Id.* at 29. The man walked to a closed door in

2

the apartment, jerked it open, and began yelling at Mason, who lay asleep in the room, to "get out of here." *Id.* at 30. The man entered the room and invited Officer Miller to do the same. Officer Miller asked Mason to accompany him outside. Mason complied.

Once outside the apartment, Officer Miller asked Mason about the location of his shoes and phone. Mason said they were in the apartment. The male occupant overheard the conversation and invited Officer Miller back inside. Mason did not object to Officer Miller reentering the apartment. The male occupant pointed out Mason's phone. Officer Miller retrieved the phone and shoes and exited the apartment.

Back outside, the officers asked if Mason wanted to speak to them about the social media accounts. Officer Miller also asked for the passcode to Mason's phone so that Miller could "put his phone in airplane mode." *Id.* at 30–31. Mason had an "emotional response" to the officers' explanation for their visit and offered to put the passcode in the phone himself. *Id.* at 32–33. He also asked if he could wipe the contents of his phone, expressed that he wanted "this to go away," and said that he did not want to talk to the officers until he got an attorney. *Id.* at 50. Officer Miller declined to let Mason wipe the phone, and the officers left with the phone in tow. They did not search it until they obtained a warrant. Their search revealed 2,300 files of child pornography, including "lascivious exhibition[s] of the pubic area" of the ten-year-old daughter of Mason's ex-girlfriend. R.37 at 4; R.58 at 67–70.

A grand jury indicted Mason for inducing a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct. *See* 18 U.S.C. § 2251(a). Mason pleaded not guilty and moved unsuccessfully to suppress the evidence gathered from his cell phone. He entered a conditional plea agreement, preserving his right to appeal the district court's

denial of his motion to suppress and the length of his sentence. The district court sentenced him to 360 months.

## II.

*Motion to suppress.* Mason maintains that the district court should have suppressed the evidence from his cell phone because the officers violated the Fourth Amendment by entering the apartment and by seizing his phone without a warrant. We disagree. The officers cleared the relevant Fourth Amendment hurdles at each step of the way.

Start with the first entry. Law enforcement officers do not need a warrant when they enter a home with the consent of an individual who has apparent authority to admit them. *Illinois v. Rodriguez*, 497 U.S. 177, 188–89 (1990); *see Smith v. City of Wyoming*, 821 F.3d 697, 709 (6th Cir. 2016). Apparent authority exists if the facts available at the time of entry support a reasonable officer's belief that the consenting individual has authority over the premises. *Rodriguez*, 497 U.S. at 188. A co-occupant's authority to consent to a search of shared premises rests on the "mutual use of the property by persons generally having joint access or control for most purposes," such that others assume "the risk that one of their number might permit the common area to be searched." *United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974).

The officers obtained voluntary consent to enter from a male occupant of the apartment, and they reasonably believed that the man had authority over the entire premises. As for consent, the man invited the officers to enter the apartment for the purpose of removing Mason from it and proceeded to yell at Mason to leave. As for apparent authority, the woman who answered the door told the officers she did not have authority to answer their questions and said she would get someone who did. She called the male occupant to the door, suggesting that he had authority. By inviting the officers inside, by leading Officer Miller to the room where Mason slept, and by

opening the door to Mason's room, the man demonstrated apparent authority over the premises. *See Georgia v. Randolph*, 547 U.S. 103, 111–12 (2006). That Officer Miller then witnessed the man freely enter Mason's room and demand that Mason leave—and that Mason complied without any hint of objection—confirmed the man's apparent authority over the entire apartment, including Mason's room. *See Matlock*, 415 U.S. at 171 n.7.

Move to Officer Miller's second entry. After going outside, Mason told the officer that his shoes and phone were still in the apartment. Overhearing this, the male occupant invited Officer Miller back inside and pointed out the location of Mason's phone. All the while, Mason never objected to the male occupant's invitation. Under these circumstances, Officer Miller reasonably believed that the man had authority over the property and relied on his voluntary consent in entering the apartment for the limited purpose of retrieving Mason's belongings.

Turn to Officer Miller's decision to grab Mason's cell phone. Officers may temporarily seize personal property for investigation without a warrant when they have reasonable suspicion that the property contains evidence of a crime. *United States v. Avery*, 137 F.3d 343, 349 (6th Cir. 1997). The officer had an objective and particularized basis for reasonably suspecting that Mason's cell phone contained evidence of child pornography. Look at the totality of the circumstances: Officer Miller's investigation indicated that Mason accessed social media accounts using a cell phone to traffic in child pornography over the preceding two months, Mason's ex-girlfriend said she would not be surprised if Mason operated the accounts, and she recently found Mason transferring data from her computer to his phone, which he then refused to show her. On this record, Officer Miller permissibly seized the cell phone for temporary investigation. *See id*.

What of the officers' decision to take Mason's phone with them when they left the scene? If officers develop probable cause to believe that property contains evidence of a crime, they may

seize the property "pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it." *United States v. Place*, 462 U.S. 696, 701 (1983). Such circumstances exist "when there is an urgent need to prevent evidence from being lost or destroyed," *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1511 (6th Cir. 1988), and Mason does not dispute that the "government's significant interest in curbing the spread of child pornography" outweighs his individual possessory interest here, *United States v. Bradley*, 488 F. App'x 99, 105 (6th Cir. 2012). After Mason exhibited an "emotional response" to the officer's allegations, expressed that he just wanted "this to go away," and asked if he could wipe the phone's contents, R.58 at 33, 50, the officers' reasonable suspicion ripened into probable cause that the phone contained child pornography. At that point, Officer Miller justifiably seized the cell phone because Mason's actions created the imperative of preventing the destruction of evidence and of retaining custody of the phone until a magistrate issued a warrant to search it. *Sangineto-Miranda*, 859 F.2d at 1511–12; *see Bradley*, 488 F. App'x at 103.

Mason's counterarguments fall short. He maintains that the male occupant's invitation to the officers to enter Mason's room did not diminish his expectation of privacy there. But the question is not whether Mason had a reasonable expectation of privacy in the room. The question is whether Officer Miller reasonably relied on the male occupant's consent and apparent authority in entering the room. *See Smith*, 821 F.3d at 709. He did. The man's actions suggested that he had "joint access or control" of the room for most purposes. *See Matlock*, 415 U.S. at 171 n.7. He opened the door and "made no indication that [he] was restricted in any way from entering the bedroom" or demanding that Mason leave it. *See United States v. Cork*, 18 F. App'x 376, 383 (6th Cir. 2001) (per curiam). Mason did not register any objection to the male occupant's actions and left the apartment. Officer Miller acted reasonably.

Mason insists that Officer Miller lacked reasonable suspicion to seize the cell phone because Mason's ex-girlfriend told the officers that she asked Mason to wipe his phone's contents the week before. But Mason's ex-girlfriend also stated that Mason would not let her see his phone, and a reasonable officer could doubt that Mason complied with her request that he wipe its contents. The officers reasonably suspected that Mason's cell phone contained evidence of criminal activity based on specific information that he trafficked in child pornography using social media applications on a cell phone over the preceding two months.

Even if exigent circumstances allowed the officers to seize his phone after he requested to wipe its contents, Mason maintains that the officers manufactured the exigent circumstances by unlawfully entering the apartment and taking the phone in the first place. As noted, however, valid consent and reasonable suspicion justified the officers' entries into the apartment and their initial seizure of Mason's phone. When police do not create an exigency by engaging in conduct that violates the Fourth Amendment, they can seize property without a warrant to prevent the destruction of evidence. *See Kentucky v. King*, 563 U.S. 452, 462 (2011). No Fourth Amendment violation occurred.

*Substantive reasonableness*. Mason challenges the length of his 30-year sentence. We give substantial deference to the district court's decision on this score. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). And because we presume the reasonableness of a sentence within the guidelines range, Mason "bears a heavy burden" in persuading us to second-guess the district court's judgment. *United States v. Cunningham*, 669 F.3d 723, 733 (6th Cir. 2012).

The district court reasonably sentenced Mason at the top of his guidelines range. It acknowledged that Mason "has suffered greatly in his own life." R.59 at 30. But the court emphasized the seriousness of Mason's child pornography offense and his "vicious and persistent

7

victimization" of his ex-girlfriend's young children "for the purpose of sexual gratification" and "inflicting pain on them." *Id.* at 31. The court reasoned that Mason's significant and "disturbing" criminal history showed a "pattern of menacing, vindictive conduct," all portraying a man from whom the public needs protection. *Id.* at 31–32. After considering "all of the factors" required by 18 U.S.C. § 3553(a), the court concluded that a within-guidelines 360-month sentence fairly served the purposes of punishment. *Id.* at 32.

Mason resists this conclusion, arguing that the district court placed too much emphasis on some sentencing factors and gave short shrift to others. He points to his mental health and substance abuse problems as well as his remorse, and he adds that his criminal conduct did not involve physically touching his victims. But the court acknowledged these arguments at sentencing, even saying they were "salient." *Id.* at 31. A district court may place greater weight on some sentencing factors than on others, and "the manner in which a district court chooses to balance the applicable sentencing factors" generally is "beyond the scope" of our review. *United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2013). All in all, the district court considered the relevant sentencing factors, balanced them, and imposed a reasonable sentence.

We affirm.